EMAS, J.
 

 The issue presented is whether the release and settlement agreement, entered into between Plaintiff and an initial tort-feasor, clearly reserved Plaintiffs cause of action against a subsequent tortfeasor. We reverse, holding that the release and settlement agreement in this case failed to do so, thereby barring Plaintiff from pursuing a claim against the subsequent tort-feasor.
 

 FACTS
 

 On July 24, 2006, twenty-six-year-old Caroline Francois was admitted to North Shore Medical Center (“North Shore”) to give birth to her third child. Caroline Francois’ blood pressure was severely elevated after she delivered a healthy baby. On July 26, 2006, from 7:00 a.m. to 7:00 p.m., Mrs. Francois was under the care of Angelica Martinez, R.N. (“Nurse Martinez”), an employee of Medical Staffing Network Holdings, Inc. (“Medical Staffing”), which provided nursing staff services to North Shore. Nurse Martinez failed to treat Mrs. Francois’ spiking blood pressure and, as a result, Mrs. Francois suffered a brain bleed, requiring her to be placed on life support.
 

 Shortly thereafter, Robert Kerns, a coordinator of the University of Miami’s Life Alliance Organ Recovery Program (“the University of Miami”), entered Mrs. Francois’ hospital room without her husband’s consent; wrote a physician’s order pronouncing Mrs. Francois brain dead (despite the fact that Kerns is not a physician); ordered the removal of Mrs. Francois from life support without her husband’s consent and while she continued to exhibit spontaneous respiration. She died on July 27, 2006.
 

 In July of 2008, Nelson Francois (“Francois”), Mrs. Francois’ husband, filed a
 
 *363
 
 wrongful death action against Nurse Martinez, Medical Staffing, and the University of Miami (vicariously for the actions of Kerns). On January 5, 2010, after entering into a settlement with Nurse Martinez and Medical Staffing, Francois executed a Release and Settlement Agreement. In relevant part, that Agreement released Nurse Martinez and Medical Staffing from
 

 any and all claims, including bad faith claims, appellate claims, demands, damages, actions, causes of action, suits at law or in equity, or sum of money arising from any act or occurrence, or on account of any and all personal injury, death, disability, property damage, loss or damage of any kind whatsoever, known or unknown, already sustained or which may be hereafter sustained or allegedly sustained in consequence of any incidents, casualties, events, acts or omissions to act, from the beginning of time down to the date hereof, arising out of or resulting from the incidents occurring at the North Shore Medical Center, while Caroline Francois was under the care of the Defendants, Medical Staffing Network Holdings, Inc. ... and [Nurse Martinez] which is the subject matter of the action brought by Nelson Francois ....
 

 Based upon the terms of the Release and Settlement Agreement, the University of Miami, on March 16, 2010, filed a motion for summary judgment, based on principles of release and equitable subrogation. The University of Miami argued that Nurse Martinez was the initial tortfeasor, and as such was liable for all subsequent negligent acts, including those of the University of Miami. The University of Miami contended that Francois’ action against it was barred because the settlement agreement did not clearly reserve a cause of action against the University of Miami and therefore Francois’ rights were equitably subrogated to Nurse Martinez as a result of the Release and Settlement Agreement.
 

 Francois responded to the University of Miami’s motion for summary judgment by asserting that he had reserved a cause of action against the University of Miami when he settled his claims with Nurse Martinez and Medical Staffing as evidenced by two additional documents: (1) a mediation “memorandum of settlement” entered into at a mediation in December 2009, which led up to the settlement between Francois, Nurse Martinez and Medical Staffing; and (2) an “Addendum” to the Release and Settlement Agreement.
 
 [1]
 

 On August 2, 2010, following a hearing, the trial court entered an order granting the University of Miami’s summary judgment, finding, inter alia, that Francois failed to reserve a cause of action against the University of Miami, and that the documents provided by Francois in opposition to the motion were parol evidence and could not be considered. The trial court also determined that if there was a mutual mistake between the parties to the Release and Settlement Agreement, Francois’ remedy was a reformation action.
 
 [2]
 
 Final judgment was entered on September 7, 2010.
 

 
 *364
 
 Francois filed a motion for rehearing, arguing that the Addendum was a legally-binding component of the original agreement, rather than parol evidence. Francois also presented a Second Addendum, containing the same language as the first, but this time signed by Nurse Martinez.
 
 [3]
 
 Following a hearing, the trial court granted Francois’ motion for rehearing and vacated both its final judgment and its order granting summary judgment. In its order on rehearing, the trial court stated that it agreed
 

 with plaintiffs assertion that there is now a binding settlement agreement between Nurse Martinez and plaintiff that does not act to extinguish her claims against UM via release and equitable subrogation. The court is satisfied that UM cannot now suffer “double liability” or a “double recovery” as a consequence of this action.
 

 This appeal followed.
 

 The University of Miami argues that the Addenda were parol evidence and it was an abuse of discretion for the trial court to consider these documents in determining the intent of the settling parties when the Release and Settlement Agreement was clear and unambiguous, and failed to reserve Francois’ right to pursue a claim against the University of Miami, a subsequent tortfeasor. Francois contends that the Addenda are part of the Release and Settlement Agreement rather than parol evidence and, therefore, it was proper for the trial court to consider those documents in determining that the settling parties intended to reserve Francois’ right to pursue claims against University of Miami.
 

 STANDARD OF REVIEW
 

 Generally, an order granting rehearing should be reviewed for an abuse of discretion.
 
 Monarch Cruise Line, Inc. v. Leisure Time Tours, Inc.,
 
 456 So.2d 1278 (Fla. 3d DCA 1984);
 
 Gen. Contractors of Am., Inc. v. Stinson,
 
 524 So.2d 1148 (Fla. 3d DCA 1988). “However, if the ruling is grounded in a question of law, uncontaminated with factual conflict, the area of discretion in granting a new trial is drastically limited, and the appellate court is on the same footing as the trial court in determining the correct law to be applied.”
 
 Gen. Contractors,
 
 524 So.2d at 1150 (citations omitted). Because this case presents a pure issue of law, we examine the case de novo.
 

 DISCUSSION
 

 We must first decide whether the Release and Settlement Agreement expressly and unambiguously reserved Francois’ cause of action against the University of Miami, and, second, whether it was proper for the trial court to consider other evidence of the settling parties’ intent to reserve a cause of action.
 

 In Florida, when a person is injured by the wrongful act of one tortfeasor and that injury is subsequently aggravated by the wrongful act of another tortfeasor, the law considers the negligence of the initial tortfeasor to be the proximate cause of the negligence of the subsequent tort-
 
 *365
 
 feasor.
 
 [4]
 

 Underwriters at Lloyds v. City of Lauderdale Lakes,
 
 382 So.2d 702 (Fla.1980). “The rationale [is] to prevent (1) the victim from receiving double recovery and (2) the subsequent tortfeasor from being exposed to double liability to both the victim for damages and the initial tort-feasor under the doctrine of equitable sub-rogation.”
 
 Mosley v. Amer. Med. Int’l, Inc.,
 
 712 So.2d 1149, 1151 (Fla. 4th DCA 1998). Therefore, “[t]he initial tortfeasor is subject to the total financial burden of the victim’s injuries,” including those caused by subsequent healthcare providers.
 
 Underwriters at Lloyds,
 
 382 So.2d at 704. “This is true although the original tortfeasor and the subsequently negligent healthcare providers are independent tort-feasors and not joint tortfeasors jointly and severally liable for one common injury.”
 
 Rucks,
 
 541 So.2d at 675.
 

 The injured party may elect to recover all of his damages from the initial tortfeasor or may pursue separate claims against each wrongdoer.
 
 Id.
 
 However, the injured party cannot seek double recovery for his damages.
 
 Id.
 
 The injured party can also settle with one of the tort-feasors (initial or subsequent) and pursue a claim against the remaining tortfeasor. When the injured party settles with the subsequent tortfeasor first, there is ordinarily no issue with regard to how the language of the release or settlement may impact a cause of action against the initial tortfeasor.
 
 [5]
 
 However, where the injured party settles with the
 
 initial
 
 tortfeasor, intending that the settlement be limited to damages for injuries suffered as a result of the initial tort
 
 only,
 

 the settlement agreement and release of the initial tortfeasor should be carefully accomplished so that it is clear that the victim is not receiving compensation from the initial tortfeasor for injuries resulting from the subsequent negligence of the health care providers and that the victim is reserving the victim’s cause of action against the health care providers.
 

 Id.
 
 The Fifth District in
 
 Rucks
 
 explained the consequences flowing from the settling parties’ failure to clearly express this intent and failure to clearly reserve a cause of action against the subsequent tortfea-sor:
 

 [T]he rule is that if the victim’s settlement agreement with, and release of, the initial tortfeasor does not clearly reserve to the victim the victim’s cause of action against the [subsequent tort-feasors], the legal presumption is that the victim recovered from the initial tortfeasor for the injuries caused by the [subsequent tortfeasors] and the initial tortfeasor will become subrogated to that cause of action and the victim will be thereafter barred from asserting that cause of action against the [subsequent tortfeasors].
 

 Id.
 
 at 676.
 

 From the principles announced in these cases, Francois and Nurse Martinez were required to craft the terms of their Release and Settlement Agreement to clearly express that:
 

 
 *366
 
 1. Francois was not receiving compensation from Nurse Martinez (the initial tortfeasor) for injuries resulting from the subsequent negligence of the University , of Miami (the subsequent tortfeasor); and
 

 2. Francois was reserving his cause of action against the University of Miami.
 

 The trial court initially determined that Francois, in entering into the Release and Settlement Agreement, failed to reserve a cause of action against the University of Miami. The court concluded that Francois’ cause of action against the University of Miami was extinguished by the clear and unambiguous terms of Francois’ settlement with Nurse Martinez, and entered summary judgment in favor of the University. However, after being presented with additional evidence of the settling parties’ intent, the court vacated its order on rehearing, finding that the settlement agreement did not extinguish those claims. We find that the trial court erred in considering this additional evidence, as it was parol evidence. Francois characterizes this additional evidence as an “Addendum” (and Second Addendum) to the Release and Settlement Agreement. However, the mere labeling of such a document as an “addendum” does not make it so. The Addendum was executed on April 27, 2010 — more than five weeks after the University of Miami filed its motion for summary judgment, and more than eleven weeks after the Release and Settlement Agreement was executed. The Second Addendum was executed on September 1, 2010 — more than five months after the motion for summary judgment was filed, nearly eight months after the Release and Settlement Agreement was executed, and after the trial court had already heard and granted the motion for summary judgment.
 

 Francois argues that the Addenda are not parol evidence, but rather, are part of the original Release and Settlement Agreement, and that it was therefore proper for the court to consider those documents. That argument however, is incorrect. These documents were not executed contemporaneously with the Release and Settlement Agreement and cannot be said to be part and parcel of that Agreement. More to the point, these documents did not serve to explain an ambiguity but instead created an ambiguity which would not otherwise exist in the Release and Settlement Agreement. Neither the Addenda nor the “memorandum of settlement” can be relied upon to “explain” an agreement which, by its terms, required no explanation.
 
 Wickenheiser v. Ramm Vending Promotion, Inc.,
 
 560 So.2d 350, 352 (Fla. 5th DCA 1990) (holding “evidence that would contradict, add to, or subtract from or affect the construction of a valid, complete and unambiguous written instrument is inadmissible under the parol evidence rule”). The intent of the parties was to be determined from the four corners of the Agreement, not through consideration of extrinsic evidence.
 
 Sheen v. Lyon,
 
 485 So.2d 422 (Fla.1986);
 
 Garcia v. Tarmac Am., Inc.,
 
 880 So.2d 807 (Fla. 5th DCA 2004);
 
 V & M Erectors, Inc. v. The Middlesex Corp.,
 
 867 So.2d 1252 (Fla. 4th DCA 2004).
 

 In its initial order granting summary judgment, the trial court properly concluded that the clear and unambiguous terms of the Release and Settlement Agreement failed to reserve a cause of action and barred Francois from pursuing a claim against the University of Miami. However, the trial court erred in granting rehearing and in considering the Addenda and the memorandum of settlement in an attempt to discern an intent which was already clearly expressed by the terms of the Release and Settlement Agreement.
 
 *367
 
 We therefore reverse the order granting rehearing and remand with directions to reinstate the order granting motion for summary judgment and final summary judgment in favor of University of Miami.
 

 Reversed and remanded with instructions.
 

 [1]
 

 . The Release and Settlement Agreement was executed on January 5, 2010. University of Miami’s motion for summary judgment was filed on March 16, 2010. The "Addendum” was executed on April 27, 2010, forty-five days after the filing of the motion for summary judgment and more than 100 days after execution of the Release and Settlement Agreement.
 

 [2]
 

 . Francois concedes that he did not plead or seek reformation of the Release and Settlement Agreement at the trial court level, nor does he contend on appeal that a reformation was effectuated when the trial court entered its final order following rehearing.
 
 See, e.g., Rucks v. Pushman,
 
 541 So.2d 673 (Fla. 5th DCA 1989). Thus we do not consider wheth
 
 *364
 
 er reformation could have been utilized to achieve a different result.
 

 [3]
 

 . In its decision granting the University of Miami's motion for summary judgment, the trial court noted that the Addendum submitted by Francois had been signed by Medical Staffing, but had not been signed by Nurse Martinez. The Second Addendum was signed by Nurse Martinez on September 1, 2010, nearly eight months after execution of the Release and Settlement Agreement. Nevertheless, the parol nature of the Addendum (and the Second Addendum) remains unaffected by the presence or absence of Nurse Martinez' signature.
 

 [4]
 

 . There is no dispute that Nurse Martinez was the initial tortfeasor and the University of Miami (vicariously for Kerns) was the subsequent tortfeasor.