SALTER, J.
Marisela Otaola, individually and as personal representative of the estate of her late husband, Omar Otaola, and as the guardian of the couple’s two minor children, appeals a circuit court order dismissing with prejudice her wrongful death lawsuit against Cusano’s Italian Bakery. The unusual issue presented is whether a pre-suit settlement and payment of policy limits ($1,000,000.00) by one of Cusano’s insurers (Allstate Insurance, a non-party) without a release of Cusano’s or its excess coverage insurer (AIG, also a non-party), *995 (a) should be rescinded as an incomplete settlement (and all funds disgorged) or, alternatively, (b) should be enforced as if the wrongful death lawsuit was completely settled. We conclude that Cusano’s was not entitled to any such “heads I win, tails you lose” relief. We reverse the order of dismissal and remand the case so that the wrongful death lawsuit may be prosecuted and defended to conclusion (though giving full effect to the substantial recovery realized by Mrs. Otaola through Allstate’s tender and payment of its coverage limits).

Background

Omar Otaola was hit by a Cusano’s delivery truck while bicycling on Key Biscayne in February 2006. He died from his injuries; he was thirty-four. He was survived by Mrs. Otaola and their two children, both minors. Mrs. Otaola retained attorneys, who notified Cusano’s of the family’s claims, and Cusano’s in turn notified its insurers. In June 2006, Allstate’s adjuster described Allstate’s willingness to pay its policy limits in a letter to Mrs. Otaola’s attorney:
As you know, I am the adjuster assigned to handle the very tragic accident involving Omar Otaola which occurred on 2/25/06.
As you have already been advised, Allstate provides a combined single property damage and bodily injury liability coverage limit of $1,000,000. I have also been advised that AIG provides excess coverage for $1,000,000. However, I have not been provided a copy of the AIG policy, nor have I received any confirmation from AIG as to their position on coverage.
Pursuant to our conversation on June 12, 2006, I am tendering the combined policy limits of $1,000,000 for the claim of the Estate of Omar Otaola. Pursuant to our conversation, I will be forwarding to your office a draft in the amount of $500,000 payable to your trust account. The other $500,000 will be payable to the Allstate Assignment Group as we have agreed to structure $500,000 of this settlement. Please note, the representative who will be handling the structured portion of the settlement is Jeff Klugerman. Mr. Klugerman can be reached at [telephone number], • It was also discussed that should AIG offer to resolve this claim, you would attempt to structure a portion of the $500,000 which was tendered to your firms [sic] trust account.
By copy of this letter, I am, forwarding a copy of your letter of June 12, 2006 to AIG to review the future loss of .earning claim. •
Although I have note [sic] enclosed a release, I am looking for a general release of the insured parties as provided by F.S. 627.4265. This issue will be addressed once we have reviewed the AIG policy and there has been a determination as to AIG’s position with respect to the claim of the Estate of Omar Otaola.
A copy of the adjuster’s letter was sent to, among other persons, a Mr. Greco, the president of Cusano’s. Mr. Greco was the individual identified by the adjuster in the caption of his letter as the “insured” under the Allstate policy.
By January 2007 — over a year before the circuit court wrongful death action was filed — Mrs. Otaola and her attorney filed a petition in the probate division of the circuit court for court approval of the $1,000,000.00 settlement of the minors’ claim. The petition represented that the settlement amount would be paid by Cusa-no’s and would be for “the settlement with respect to the minors’ claim,” and it sought authorization for Mrs. Otaola “to sign the Settlement Statement and the release on behalf of her minor children.” After re *996 view of the proposed terms and proposed distribution of proceeds by a court-appointed guardian ad litem, the probate judge approved the settlement for the minors in June 2007. The probate division order did not, however, mention or provide authorization for execution of any release by Mrs. Otaola, either individually, as personal representative of her late husband’s estate, or as guardian of the children. So far as the record discloses, no representative or attorney for Cusano’s filed a pleading relating to the probate court petition or appeared at the hearing on the petition.
In February 2008; after the $1,000,000.00 in Allstate insurance proceeds had been 'disbursed in accordance with the probate division order — and with no release provided by Mrs. Otaola in favor of either Allstate or Cusano’s — Mrs. Otaola commenced the circuit court wrongful death case against Cusano’s and Miami-Dade County.[1] Cusano’s answer and affirmative defenses asserted, among others, the following affirmative defense:
6. In June, 2006, Defendant, CUSA-NO’S ITALIAN BAKER [sic], a Florida corporation, through its insurance carrier delivered to the Plaintiffs and Plaintiffs accepted from this Defendant the sum of $1,000,000.00 in cash and structured settlement in full satisfaction of the Plaintiffs’ claims herein; therefore these claims are barred by accord and satisfaction.
After a further two years of pretrial proceedings, the case impassed at mediation and was set for jury trial in May 2010. Two months before the scheduled trial, Cusano’s filed its “motion to recover settlement proceeds or in the alternative enforce settlement.” Cusano’s, which had not participated in the probate division approval of the minor children’s recovery, was nonetheless fully aware of the facts that (a) its excess insurer, AIG, had not reached a settlement or other resolution with the Otaola family (a future event contemplated by Allstate’s adjuster in his letter if Cusa-no’s was to be released), and (b) no release of Cusano’s had been authorized by the probate judge or executed by Mrs. Otaola.
Mrs. Otaola opposed Cusano’s motion to recover the settlement proceeds or, in the alternative, to enforce the 2007 settlement with the minors (by dismissing the lawsuit with prejudice, as if a complete release had in fact been a settlement term). In opposition to Cusano’s motion, Mrs. Otaola filed and served the affidavits of her attorney and of the structured settlement consultant who had arranged an annuity with an Allstate affiliate as part of the Allstate payments. The affidavits and attachments established that the presuit settlement was intended to be a partial rather than global settlement, that a complete release of Cu-sano’s would not be forthcoming until matters were finalized with AIG, and that negotiations with AIG had continued into 2010. Mrs. Otaola moved for an evidentia-ry hearing in order to establish the intentions of the parties and Allstate regarding the settlement, citing such cases as Makar v. Gowni, 983 So.2d 769 (Fla. 5th DCA 2008).[2] The trial court denied that motion, *997 directing Mrs. Otaola either to return the $1,000,000.00 in settlement proceeds or to provide the complete release and dismissal sought by Cusano’s, within thirty days. When Mrs. Otaola did neither, the trial court dismissed the wrongful death lawsuit with prejudice. This appeal followed.

Analysis

As Allstate’s insured, Cusano’s would normally participate directly in the terms of settlement of a covered claim, including the delivery of a release as a condition of payment. This is an extraordinary case in that sense. Allstate’s immediate recognition of its insured’s exposure as a result of Mr. Otaola’s death is obvious in the above-quoted pre-suit letter from its adjuster.
But it is also obvious that Allstate had its own motivation to tender and pay policy limits immediately, whether with or without a complete release. Florida’s bad faith statute[3] and case law can expose a tortfeasor’s insurer to liability beyond policy limits if the insurer, for example, imposes overreaching requirements in the language of a release and other settlement terms. See, e.g., United Auto. Ins. Co. v. Estate of Levine, 87 So.3d 782 (Fla. 3d DCA 2011), review denied, 92 So.3d 215 (Fla.2012). Moreover, for an insurer that gives proper consideration to the grieving, financially-impacted survivors in a family devastated by the loss of a parent and provider in the wake of a tragic death such as this, there is also the salutary goal of providing proceeds and structured payments to the survivors immediately rather than years later. It is therefore appropriate to view the prompt settlement documented by the adjuster and brought to the probate judge for approval as a settlement that is in substance between Mrs. Otaola, as guardian of the minors, and Allstate, rather than a settlement of all claims in the then-unfiled wrongful death case against Cusano’s that included claims by not only the children but also by Mrs. Otaola individually.
Cusano’s insists that the petition for settlement in the probate court indicated that Cusano’s was the tortfeasor, and that there either was or was not a complete settlement. The interpretation of settlement offers and acceptances is simply a subset of the law of contracts. Commercial Capital Res., LLC v. Giovannetti, 955 So.2d 1151 (Fla. 3d DCA 2007). If the settlement presented to the probate judge was clear and unambiguous, and if the terms mandated a complete release of all the Otaola family’s claims against Cusa-no’s, then we would agree that the settlement agreement should be enforced. Univ. of Miami v. Francois, 76 So.3d 360 (Fla. 3d DCA 2011), review denied, 99 So.3d 943 (Fla.2012). And if the settlement terms were incomplete or ambiguous, such that there was never a meeting of the minds, Cusano’s assertion that the insurance proceeds should be repaid seems logical.
But Cusano’s arguments fail for two primary reasons. First, Cusano’s did not participate in the purported “complete” settlement of all claims before the probate judge. Cusano’s did not demand a complete release, or move to intervene to assure that a release would be forthcoming. Had it done so, that demand would have been flatly inconsistent with Allstate’s offer and performance (payment in full with an agreement that any release would follow a complete settlement addressing AIG’s policy), and any unresolved issues might have been addressed then and there. Instead, Cusano’s waited over two years to demand the release to which it suddenly claimed to be entitled in a *998 guardianship matter in which Cusano’s was not a party.
Additionally, Cusano’s did not plead “settlement,” or “release,” as an affirmative defense, presumably because it had not in fact obtained an agreement to be released, much less actually been released. Cusano’s instead asserted “accord and satisfaction” as an affirmative defense, but this conclusory allegation would have been subject to proof. Cusano’s did not, in fact, make a payment toward the satisfaction of its liability — Allstate did. The affidavits filed by Mrs. Otaola contradicted Cusano’s allegations and thus raised a genuine issue of material fact regarding that affirmative defense. The starting point for an accord and satisfaction is proof that “the parties mutually intend to effect a settlement of an existing dispute by entering into a superseding agreement....” Martinez v. So. Bayshore Tower, L.L.L.P., 979 So.2d 1023, 1024 (Fla. 3d DCA 2008) (emphasis supplied). In this case, those apparently-differing intentions created a triable issue of fact.
Second, Cusano’s alternative demand for repayment of the Allstate settlement proceeds is equally unfounded. If Cusano’s never authorized Allstate to pay over the insurance proceeds without a release, that is a matter between insurer and insured— it is not the basis for a demand by Cusa-no’s for a widow and two minor children to disgorge the payments approved by the probate judge (and disbursed more than two years before that demand) without any directive that Cusano’s would be released.
The second infirmity in Cusano’s argument in this appeal is an independent basis for reversal. The settlement brought to the probate judge was “the settlement of the minors’ claim.” Mrs. Otaola was the petitioner for approval of the settlement, but only in her capacity as “natural guardian” of the children. Paragraph 4 of the petition for court approval of the $1,000,000.00 settlement states that Mrs. Otaola “requests approval of the settlement for the minor children in the following manner,” followed by an itemization of the payments to be made. The order and amended order “approving settlement distribution for minor” were approved on that basis (not as a complete settlement of Mrs. Otaola’s own claims).
Finally, we observe that Cusano’s has not been prejudiced in any apparent way by Allstate’s unilateral tender and payment without a release. At oral argument, counsel for both Mrs. Otaola and Cusano’s acknowledged that the $1,000,000.00 paid by Allstate redounds to the benefit of Cu-sano’s in any subsequent trial of the wrongful death action, and that Cusano’s has, in effect, been released to that extent.
For these reasons, we reverse the trial court’s “order of dismissal with prejudice as to defendant Cusano’s Italian Bakery,” and we remand the case for further proceedings. As noted, the insurance proceeds paid by Allstate shall be credited to Cusano’s following any subsequent verdict and judgment.
Reversed and remanded, with directions.

. The County was not a party to the settlement at issue here, and the order of dismissal with prejudice against Cusano’s did not address the Otaola family’s claims against the County.

. "The defendants make a number of arguments as to why it makes sense to view the settlement as a global settlement for all defendants, and also argue that certain documents of record support their position that this was the intent of the parties upon entering the settlement agreement. However, the settlement documents themselves are at best ambiguous as to this issue. As such, the issue cannot be resolved summarily and will require an evidentiary hearing...." 983 So.2d at 772.

. § 624.155, Fla. Stat. (2007).