[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13698

Non-Argument Calendar

_____

STAR2STAR COMMUNICATIONS, LLC,

Plaintiff-Counter Defendant-
Appellee,

*versus*

AMG GROUP OF BRUNSWICK, LLC,

Defendant-Counter Claimant-
Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 8:20-cv-02078-TPB-JSS

———————————————

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

AMG Group of Brunswick, LLC, appeals the summary judgment in favor of its former telecommunications provider, Star2Star Communications, LLC. Star2Star sued AMG after it refused to pay for telecom services it received before assigning some of its subscription obligations to a third party. The district court ruled that AMG had breached its subscription agreements and rejected its counterclaims for breach of contract and unjust enrichment. We affirm.

In 2018, AMG executed several subscription agreements with Star2Star. For each, "[t]he Agreement Term [ran for five years from] . . . the date the StarSystem [was] Enabled and Available for Use at the last of [the AMG] locations." The parties also agreed that AMG could assign its subscriptions to a third party "with[] the written consent of Star2Star." Any assignment would "not invalidate or render void any contract between Star2Star" and AMG.

The subscription agreements required AMG to pay invoices "deliver[ed] monthly . . . in electronic format" "within thirty (30) days from receipt of the invoice." For any outstanding balance, "Star2Star reserve[d] the right to charge a late fee . . . equal to the lesser of the maximum interest rate permitted by law or 1½ percent

21-13698                Opinion of the Court                3

per month (18 percent per year)." If AMG "failed to timely pay un-disputed amounts when and as due, Star2Star [would] not termi-nate the Service for non-payment unless [AMG] fail[ed] to pay the past due undisputed amount within seven (7) days of notification by Star2Star."  In the event of a "cancellation, termination, or de-fault . . . prior to the end of the Term . . . [AMG would have an] immediate acceleration of all charges to be due under [the] Agree-ment . . . including recurring Service and a one-time disconnect fee of $150 per location . . . ."  AMG was "also responsible for all prior outstanding balances (including any accrued interest charges), ac-tual usage and associated Taxes and Fees on all amounts due . . . ."

In December 2019, AMG sold its assets to Ohio Machinery Company. AMG immediately began to wind down its and its sub-sidiaries' operations. AMG notified Star2Star of the sale, but AMG did not cancel its subscriptions.

AMG assigned some of its subscriptions to Ohio Machinery. In the assignment, AMG agreed to remain responsible for "any loss, liability, claim, damage, and expenses (including reasonable attor-neys' fees and expenses), arising out of or resulting from [its] failure to comply with the terms of the [Subscription] Agreement prior to the Effective Date." AMG and Ohio Machinery signed the assign-ment agreement, respectively, on February 24, 2020, and on April 2, 2020. And Ohio Machinery assumed the subscriptions "from and after the Effective Date" of June 4, 2020, when Star2Star signed the contract.

Star2Star also sent AMG final invoices. Star2Star charged AMG for services it received between December 2019 and March 2020 at the locations later assumed by Ohio Machinery. Star2Star also charged for equipment AMG had not returned, a $150 termination fee for each AMG location, and for the remaining life of the AMG subscriptions that had not been assigned to Ohio Machinery.

On June 12, 2020, Star2Star demanded payment of the final invoices. The demand letter stated that AMG had "cancell[ed] . . . three locations in March 2020 . . . [and] remain[ed] liable for the defaults which occurred before the effective date of the Assignment and Assumption Agreements." AMG refused to pay.

Star2Star filed in a Florida court a complaint for breach of contract and demand for actual damages of $109,144.06 and submitted copies of its agreements with and invoices to AMG. *See* Fla. Stat. § 48.193(1)(a)(7). AMG removed the action to the district court, *see* 28 U.S.C. § 1332, and filed an answer and counterclaim for breach of contract and unjust enrichment. AMG alleged that its "obligations to [Star2Star] were discharged as of June 4, 2020," based on the "counter promise" of Brook Davidson, a Star2Star service representative, "[i]n an email dated February 20, 2020, . . . [that] stated once agreements are signed by all three parties including Star2Star and fees paid the[n] AMG Peterbilt will have no more obligation to Star2Star." That statement responded to an inquiry from AMG whether it would "have no further charges . . . [i]f both [it and Ohio Machinery] sign the [Assignment & Assumption

Agreement] as well as pay the $250 transfer fee per agreement."

Both Star2Star and AMG moved for summary judgment. Star2Star attached to its motion a declaration from Joshua Roberts, its former staff attorney who had been promoted to Associate General Counsel for its parent company. Roberts declared that he "ha[d] become, and continue[d] to be, familiar with Star2Star's practices and procedures in terms of contracting with third parties, amending contracts with third parties and addressing financial issues relating to customers." Roberts "reviewed and . . . [was] familiar with Star2Star's files and business records related to [the] matter" and determined that the subscription agreements made AMG liable for the amounts demanded in the final invoices. Roberts declared that Davidson lacked authority to "negotiate or change the terms of any of Star2Star's contracts."

AMG filed a motion to strike Roberts's declaration, which the district court denied. AMG argued that Roberts was not identified in initial disclosures and that he lacked personal knowledge of business affairs. The district court determined that "Roberts's declaration was submitted in his capacity as a corporate representative and is not required to be based on personal knowledge." The district court also determined that "[t]he initial disclosures [for AMG] included a corporate representative witness, and even if Roberts should have been specifically identified, any failure to do so was harmless."

The district court entered summary judgment in favor of Star2Star. The district court ruled that undisputed evidence established that AMG had breached the subscription agreements and that its defense of accord and satisfaction and counterclaim for breach of contract failed. The district court also ruled that Star2Star was not unjustly enriched by receiving payments to which it was "contractually entitled" and, in the alternative, that the agreements extinguished the claim of AMG for unjust enrichment.

We review a summary judgment *de novo*. *MidAmerica C2L Inc. v. Siemens Energy Inc.*, 25 F.4th 1312, 1325 (11th Cir. 2022). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under Florida law, which the parties agree applies, "[t]o prove breach of contract, the plaintiff must establish (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Farman v. Deutsche Bank Nat'l Tr. Co. as Tr. for Long Beach Mortg. Loan Tr. 2006-05*, 311 So. 3d 191, 195 (Fla. Dist. Ct. App. 2020) (internal quotation marks omitted). To make that determination, "[w]hen the language of a contract is clear and unambiguous, courts must give effect to the contract as written and cannot engage in interpretation or construction as the plain language is the best evidence of the parties' intent." *Talbott v. First Bank Fla., FSB*, 59 So. 3d 243, 245 (Fla. Dist. Ct. App. 2011).

The district court did not err. As the district court stated, "uncontroverted evidence" established that AMG breached its

subscription agreements. AMG agreed to pay for five years of tele-communication services and to incur penalties in the event of non-payment. AMG breached its agreement to pay Star2Star for services it provided preceding the assignment and owed $109,144.06 in unpaid invoices and related penalties. That AMG assigned some subscription agreements to Ohio Machinery in June 2020 did not eliminate its prior indebtedness to Star2Star. As provided in the subscription agreements, the assignment did "not invalidate or render void [the] contract between Star2Star" and AMG.

The defense of accord and satisfaction failed as a matter of law. "The starting point for an accord and satisfaction is proof that the parties *mutually intend* to effect a settlement of an existing dispute by entering into a superseding agreement." *Otaola v. Cusano's Italian Bakery*, 103 So. 3d 993, 998 (Fla. Dist. Ct. App. 2012) (internal quotation marks omitted and alteration adopted). AMG argues that the Star2Star representative's email and the assignment to Ohio Machinery constitutes an accord and satisfaction of its subscriptions. But AMG never disputed the amount it owed under the subscription agreements. It inquired, and the Star2Star representative affirmed, that AMG would incur "no further charges" after the assignment. Without a dispute, there was no accord and satisfaction.

AMG argues that Star2Star breached its assignment agreements by demanding AMG pay for subscriptions assumed by Ohio Machinery. But Star2Star demanded payment for services it provided *before* June 2020, when AMG still owned the subscriptions.

In the assignment agreements, AMG remained liable for "failure to comply with the terms of the [Subscription] Agreement prior to the Effective Date" of the assignment. AMG still owed the charges it incurred before the assignment. AMG also does not dispute that it "agree[d] the Subscription Agreements and the Assignment Agreements are valid contracts" and that "unjust enrichment is unavailable in Florida where a valid, binding and enforceable contract exists." *See Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.").

The district court did not abuse its discretion by refusing to strike Joshua Roberts's declaration. The initial disclosure stated that Star2Star had a "[c]orporate representative" with "[k]nowledge as to communications received from and sent to [AMG]," and the subjects of Roberts's declaration—the parties' contracts, the amount of damages to Star2Star, and the email from its representative—were addressed in the parties' pleadings. AMG provided notice that it intended to depose the Star2Star corporate representative, but later declined to do so. Roberts, as a former staff attorney for Star2Star, was familiar with its contracts and business practices. As a corporate representative, he could testify about Star2Star business records. And Roberts discussed official records that were admissible as evidence, *see* Fed. R. Evid. 803(6), and that Star2Star had attached to its complaint. *See Eli Lilly & Co. v. Air*

21-13698               Opinion of the Court                    9

*Exp. Int'l USA, Inc.*, 615 F.3d 1305, 1317 (11th Cir. 2010). The district court was entitled to consider Roberts's declaration.

We **AFFIRM** the summary judgment in favor of Star2Star.