LAWSON, J.,
dissenting.
I dissent because the Court answers the wrong question and because the answer, which effectively leaves the initial tortfea-sor without a remedy, is contrary to the basic tenets underlying common law tort theory. I would rephrase the question to match the facts of this case, to read as follows:
WHEN AN INJURED PARTY SECURES A JUDGMENT AGAINST AN INITIAL TORTFEASOR AND THEN SUES A SUBSEQUENT TORTFEA-SOR TO RECOVER THE SAME DAMAGES, MAY THE INITIAL TORTFEASOR JOIN THE ACTION AND FILE A CONTINGENT EQUITABLE SUBROGATION CLAIM?
I would answer this rephrased question affirmatively. To explain why, I will first define two relevant terms; then, explore the ’“first principles” of Florida tort law and related policy decisions that lay the framework within which we must decide this case; and, finally, address how, only by disregarding these principles and the policy choices that they informed, does the majority deny the initial tortfeasor access to a contingent equitable subrogation claim.
I. RELEVANT TERMS
“Joinder” is “[t]he uniting of parties or claims in a single lawsuit.” Black’s Law Dictionary 965 (10th ed. 2014).
“Subrogation” is “[t]he substitution of one party for another whose debt the party pays.... ” Id. at 1654. “Conventional subrogation” is “[sjubrogation that arises by contract.” Id. at 1655. “Equitable subro-gation” is “[sjubrogation that arises by operation of law or by implication in equity to prevent fraud or injustice.” Id Similar to other equitable remedies, equitable sub-rogation is “founded on the proposition of doing justice without regard to form.” Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702, 704 (Fla. 1980). The theory is that because the initial tortfeasor has become legally liable for damages that should rightly be owed by the subsequent tortfeasor to the plaintiff, the initial tort-feasor “is placed ‘in the shoes’ of the plaintiff’ and can bring what would have been the plaintiffs cause of action against the subsequent tortfeasor. Id. (quoting 30 Fla. Jur. Subrogation § 11).
II. RELEVANT LAW
A. First Principles of Tort Law
The “first principles”[3] undergirding our modern tort system are clear: “Tort law represents the way in which we draw lines around acceptable and unacceptable noncriminal behavior in our society. Torts are designed to encourage socially beneficial conduct and deter wrongful conduct.” Jews for Jesus, Inc. v. Rapp, 997 So.2d 1098, 1105 (Fla. 2008) (quoting Denver Publ’g *793 Co. v. Bueno, 54 P.3d 893, 897-98 (Colo. 2002)). “ ‘[T]he primary purpose of tort law is “that wronged persons should be compensated for their injuries and that those responsible for the wrong should bear the cost of their tortious conduct.”’” Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182, 1190 (Fla. 2003) (quoting Weinberg v. Dinger, 106 N.J. 469, 524 A.2d 366, 375 (1987)). Most basically, when someone is harmed by the wrongful acts of others, we try to adjudicate the dispute as fairly as possible to all parties and as efficiently as possible for society. Id.
I will focus first on the goal of fairness to all parties. That basic goal breaks down into two principles that are often at odds. The first is that an injured party should be “made whole” or fully and fairly compensated for the harm caused by others. See 25 C.J.S. Damages § 118 (June 2017 Update) (“The level of compensatory damages is determined with reference to the plaintiffs loss, and damages should compensate for an individual’s loss and no more. The law will not put the injured party in a better position than he or she would be in had the wrong not been done. Thus, an injured party is to be made as nearly whole as possible....”) (footnotes omitted). The second is that a tortfeasor should not be required to pay for harm that he or she did not cause. See Restatement (Third) of Torts: Apportionment of Liab. § 26 cmt. a (2000) (“No party should be liable for harm it did not cause.... ”). These appear to be the most basic “first principles” of fairness to the parties in modern tort law. In section III of this opinion, I will refer to these principles using the labels “fair recovery” and “fair apportionment,” respectively.
There also seems to be a somewhat unrelated basic principle that an injured party should not be forced to bring a claim against a party that the injured party does not want to sue. I will refer to this as the “plaintiffs choice” principle. See Stuart v. Hertz Corp., 351 So.2d 703, 706 (Fla. 1977) (“The choice of when and whether to sue his treating physician for medical malpractice is a personal one which rightfully belongs to the patient.”).
Finally, there appears to be a general preference that related claims be adjudicated in one proceeding when possible. See 35A C.J.S. Federal Civil Procedure § 134 (June 2017 Update) (explaining that courts generally have a strong policy favoring the inclusion of “all persons materially interested, either legally or beneficially, in the subject matter of a suit... so that there can be a complete decree which will bind them all and so that the court can do complete justice”) (footnote omitted); 5 Fla. Prac., Civil Practice § 15:8 (2016-17 ed.) (“Florida courts have expressed a general preference for the resolution of multiple claims in a single trial.”). Although this preference appears primarily rooted in society’s concern for efficiency, it also strongly serves the interests of the parties by avoiding the risk of inconsistent verdicts and saving costs for them as well. Id. I will refer to this last principle in section III as the “joinder” principle.
B. The Swing Between Competing Principles & General Choice of Comparative Negligence
To fully understand the rephrased question, it is extremely helpful to have at least some basic understanding of how the law has shifted over time as our courts and legislatures—guided by the “first principles” discussed above—have attempted to be as fair as possible to all parties and to the public. I start with the rule of “contributory negligence” that “arose in England in the early nineteenth century, soon spread to the United States, and flowered throughout the common law world with the growth of the industrial revolution.” David C. Sobelsohn, Comparing Fault, 60 Ind. L.J. 413, 413 (1985) (footnotes omitted). *794 The “contributory-negligence doctrine” is a rule of law that “completely bars a plaintiffs recovery if the damage suffered is partly the plaintiffs own fault.” Black’s Law Dictionary 403 (10th ed, 2014), This rule protected tortfeasors from liability for harm that they did not cause and reduced costs for the civil justice system. But, these goals, achieved through “all-or-nothing” recovery, Sobelsohn, supra, at 413, were met at a complete cost of the other “first principle” of making the injured party whole for damages caused by others.
Between 1945 and the mid-1970s, England and most jurisdictions in the United States replaced the contributory negligence doctrine with a doctrine of “comparative' negligence” by which a plaintiffs recovery against a single tortfeasor would be reduced to the extent that his or her own actions caused the injury for which he or she sought to recover from the defendant. Id. at 414-15 & n.16; see also Black’s Law Dictionary 341-42 (10th ed. 2014) (defining the “comparative-negligence doctrine” as “[t]he principle that reduces a plaintiffs recovery proportionally to the plaintiffs degree of fault in causing the damage, rather than barring recovery completely” and noting that most states have statutorily adopted the doctrine). Florida - abandoned contributory negligence for comparative negligence in 1973. See Hoffman v. Jones, 280 So.2d 431, 438 (Fla. 1973).
Cases involving two- or more tortfeasors are more complicated and have spawned various rules in various jurisdictions at various times to address the “first principles,” Focusing on a desire to make the injured party whole, a doctrine of joint, and several liability began to be widely applied in many contexts involving multiple tort-feasors. See generally, Gerald W. Boston, Apportionment of Harm in Tort Law: A Proposed Restatement, 21 U. Dayton L. Rev. 267 (1996). Under this doctrine, a tortfeasor is held fully liable for all damages caused by all tortfeasors. This doctrine promotes the principle of making an injured party whole but usually results in a tortfeasor compensating the plaintiff for harm that the tortfeasor did not cause. See Agency for Health Care Admin. v. Associated Indus. of Fla., Inc., 678 So.2d 1239, 1257 (Fla. 1996) (explaining that joint and several,liability “allows a claimant to recover all damages from one of - multiple defendants even though that defendant may be the least responsible defendant in the cause”).
While some. jurisdictions applied joint and several liability, other jurisdictions applied comparative negligence, principles to the. multiple-tortfeasor problem. See Boston, supra, at 291. And, ultimately, almost all jurisdictions ended up selecting comparative negligence principles over joint and several liability as the fairest system overall, in most cases. See, e.g., 86 C.J.S. Torts § 96 (June 2017 Update) (“Where the tortfeasors have not acted in concert and have caused separate and distinct harms or injuries, each tortfeasor is only severally liable for the damage caused by its own-tortious conduct.”). Now, in most cases, “an-injury caused by two or. more persons should be apportioned according to ¡their'respective shares of comparative responsibility.” Restatement (Third) .of Torts: Apportionment Liab. § 26 cmt. a. (2000). In Florida, these general principles were codified in statute when the Legislature adopted the “Uniform Contribution Among Tortfeasors Act” in 1975. See ch. 75-108, Laws of Fla. (creating § 768.31, Fla. Stat. (1975)).[4]
*795 The law in Florida also appears to have developed to address the competing efficiency and plaintiffs choice concerns in a fair way. A plaintiff can join all tortfeasors in one action (assuming that the tortfeasor can be found and a Florida court has personal jurisdiction over the party). See Fla. R. Civ. P. 1.210. And, if a plaintiff has no desire to sue a tortfeasor, the other defendant tortfeasors can still have the absent tortfeasor included on the verdict form so that each defendant is held responsible only for the harm attributable to its conduct. See Fabre v. Marin, 623 So.2d 1182, 1186-87 (Fla 1993), receded from on other grounds by Wells v. Tallahassee Mem’l Reg’l Med. Ctr., 659 So.2d 249 (Fla. 1995).
If these rules applied in this case, there would be no question to answer. The plaintiff could have chosen if and when to sue his medical providers, but Boozer (the initial tortfeasor) would not have been held responsible for damages' caused by the medical providers (the subsequent tortfea-sors).[5] However, these general rules do not apply because of a long-standing common law exception to the general common law rule that “each tortfeasor is only severally liable for the damage caused by its own tortious conduct,” 86 C.J.S. Torts § 96 (June 2017 Update)—an exception that applies where, as here, the medical provider whose care is necessitated by the initial tortfeasor’s negligence renders care negligently, further damaging the plaintiff.
C. Exception for Initial Tortfeasor & Subsequent Negligence by Medical Provider
Even as jurisdictions rejected joint and several liability in most multiple-tortfeasor situations, they almost uniformly kept the rule that when a tortfeasor causes “another’s bodily injury” and “additional bodily harm result[s] from.., efforts of third persons in rendering aid which the other’s injury reasonably requires, [the initial tort-feasor is held fully liable for the additional bodily harm,] irrespective of whether such acts are done in a proper or a negligent manner.” Restatement (Second) of Torts § 457 (Mar. 2017 Update). .The Restatement (Second) of Torts .explains the basis for this rule as it relates to medical treatment as follows:
It would be stretching the idea of ■probability too far to regard it as within the foresight of a negligent actor that his negligence might result in harm so severe as to require such services and therefore that he should foresee-that such services might be improperly rendered. However, there is a risk involved in the human fallibility of physicians, surgeons, nurses, and hospital staffs which is inherent in the necessity of seeking their services. If the actor knows that his negligence may result in harm sufficiently severe to require such services, he should also, recognize this as a risk involved in the other’s forced submission to, such services, and having put the other in a position to require them, the actor is responsible for any additional injury resulting from the other’s exposure to this risk.
Id. at cmt. b.
As in almost all states, this was the longstanding rule in Florida. See J. Ray Arnold Lumber Corp. v. Richardson, 105 Fla. 204, 141 So. 133, 135 (1932). And, the *796 Legislature did not change this rule when it adopted section 768.81, Florida Statutes. See Assoc. for Retarded Citizens-Volusia, Inc. v. Fletcher, 741 So.2d 520, 525 (Fla. 5th DCA 1999). As noted in several district court of appeal opinions,[6] this rule is contrary to Florida’s general comparative negligence policy choice that favors not holding a person legally responsible for injuries that he or she did not legally cause.[7] However, I see no reason to question the Legislature’s decision to stick with the near-universal rule in this context that favors fairness to the plaintiff over the initial tortfeasor whose wrongful actions forced the plaintiff to seek medical care.
D. The Initial Tortfeasor’s Remedy
As a balance, however, the law also almost universally recognizes the need to provide a legal avenue for an initial tort-feasor, once liable for injuries attributable to subsequent medical negligence, to seek recourse from the medical provider(s) who legally caused the damages. See generally, M. Flaherty, Right of Tortfeasor Initially Causing Injury to Recover Indemnity or Contribution from Medical Attendant Aggravating Injury or Causing New Injury in Course of Treatment, 72 A.L.R. 4th 231 (1989). As indicated by the title of this article, most states rely upon an indemnity or contribution theory as the means through which the initial tortfeasor made liable for medical negligence can pursue a claim against the negligent medical provider(s).[8] Id. at § 2[b]. Florida is virtually alone in its reliance upon equitable subro-gation as the applicable legal theory. Id.; see also Lloyds, 382 So.2d at 704 (recognizing that “the doctrines of indemnity and contribution among subsequent tortfeasors are not cognizable under Florida law” and opting to “align[ ] Florida with [two] jurisdictions relying upon subrogation as a remedy of affording an initial tortfeasor equitable apportionment of liability when a victim’s injuries have been negligently aggravated by an attending doctor”).
III. ANSWERING THE REPHRASED QUESTION
With the proper framework in place, resolution of the question raised by the facts of this case easily flows from a reference back to the first principles of tort law and a simple step-by-step review of Florida’s policy choices that have placed us in a position of needing to address the question at all.
First, Florida chose fairness to the injured party when it rejected contributory *797 negligence in favor of comparative negligence. See Hoffman, 280 So.2d at 438. This is particularly significant here because common sense suggests that the most significant damages flow from the brain injury and also suggests a fair probability that the brain injury could have been avoided had Hintz chosen to wear a helmet.[9]
Second, Florida chose fairness to the injured party by choosing the fair recovery principle over the fair apportionment principle in this narrow category of multiple-tortfeasor cases and thereby allowed the plaintiff to recover a judgment from the initial tortfeasor for damages attributable to the subsequent tortfeasor. See Stuart, 351 So.2d at 706.
Third, Florida chose fairness to the plaintiff by choosing the plaintiffs choice principle over the joinder principle and barring the initial tortfeasor from joining the medical provider in the initial suit. See id.
Fourth, Florida chose fairness to the plaintiff by choosing the plaintiffs choice principle over the fair apportionment principle and barring the initial tortfeasor from bringing an action independent of the original plaintiff and against the subsequent tortfeasor, even after entry of the judgment against it for damages attributable to the subsequent tortfeasor, without first fully satisfying the judgment (which the initial tortfeasor in this case clearly cannot do). See Lloyds, 382 So.2d at 703-704 (holding initial tortfeasor could state a claim for equitable subrogation against the allegedly negligent medical provider on facts where the initial tortfeasor had previously “settl[ed] with the victim for all injuries flowing from the accident and her treatment thereof’).
But the facts of the case before us necessitate another policy choice. At this juncture, if the goal really is to be as fair as possible to all parties and as efficient as possible for society, it is time to consider fairness to the initial tortfeasor and society’s interest in efficiency. Barring the initial tortfeasor’s action now that the injured party has filed suit against his medical providers does nothing to satisfy any first principle. Allowing the action honors both the joinder principle and the fair apportionment principle. The answer is clear. Now that the injured party has sued his medical providers, the initial tortfeasor who has been legally “placed ‘in the shoes’ of the plaintiff’ must be allowed to join the plaintiffs action to protect its interests.[10] Id. at 704 (quoting 30 Fla. Jur. Subrogation § 11).
The majority’s contrary result seems to be grounded in two concerns. First, the majority seems to .imply that something in the nature of the equitable subrogation doctrine itself prevents this fair result. It does not. Despite the fact that subrogation is generally described as an equitable rem-¿dy for those who “pay” the debts of others, “[mjost courts... appear to be permitting. . .contingent subrogation claims as a matter of right, in accordance with [federal and state procedural joinder rules].” Greg *798 ory R. Veal, Subrogation: The Duties-and Obligations of the Insured and Rights of the Insurer Revisited, 28 Torts & Ins. L.J. 69, 84 (1992). The same is trae in Florida, at least in other contexts. See Attorneys’ Title Ins. Fund, Inc. v. Punta Gorda Isles, Inc., 547 So.2d 1250, 1251 (Fla. 2d DCA 1989) (holding that Florida law permits the filing of contingent subrogation claims because it is more convenient than requiring a second suit and because Florida Rule of Civil Procedure 1.180 (Florida’s procedural joinder rule) permits it); see also Essex Builders Grp., Inc. v. Amerisure Ins. Co., 429 F.Supp.2d 1274, 1289 (M.D. Fla. 2005) (“Florida decisions hold that contingent claims of equitable subrogation and contribution can be asserted prior to, making payment.”). More importantly, the very nature of this equitable doctrine is flexibility to promote fairness,, as the Fifth District correctly recognized below. See Allstate Ins. Co. v. Theodotou, 171 So.3d 163, 167-68 (Fla. 5th DCA 2015) (relying on equity’s favor of “justice and fairness over formalistic legal rales” and Lloyds’ policy goal of “ensuring] that liability is correctly apportioned and [the initial tortfeasor] is not held liable for more than her fair share” to authorize the contingent equitable subrogation claim against the,Medical Provider defendants).
As explained by this Court more , than eighty years ago,
[t]he doctrine of subrogation,. .has long been an established branch of equity jurisprudence. It does not owe its origin to statute or custom, but it is a creature of courts of equity, having for its basis the doing of complete and perfect justice between the parties without regard to form. It is a doctrine, therefore, which will be applied or not according to the dictates of equity and good conscience, and considerations of public policy, and will be allowed in all cases where the equities of the case demand it.
Dantzler Lumber & Exp. Co. v. Columbia Cas. Co., 115 Fla. 541, 156 So. 116, 119 (1934) (quoting 25 R.C.L. 1313) (emphasis added). We followed this declaration of the limits and contours of the doctrine with another declaration: “Our court is committed to a liberal application of the rale of equitable subrogation.” Id. at 120. The majority’s narrow, formalistic holding stands in odd juxtaposition with the nature of the remedy that it purports to apply—a “remedy”'that on the actual facts of this case provides no remedy at all,' “[E]quity and good conscience” demand a different result—a result that is consistent with the first principles of Florida’s tort law and the policy choices they have informed, including this Court’s commitment to liberal application of the rale of equitable subro-gation. Lloyds, 382 So.2d at 704.
The majority’s second concern seems to be fairness to the plaintiff, although this concern does not seem to be grounded in any recognized general policy principle. Rather, the majority observes that permitting joinder of the initial tortfeasor would “overly ’ complicate the litigation and unfairly prejudice Hintz.” Majority op. at 789. I have three responses- to this unexplained and unsupported claim.
First, joinder is universally favored in every jurisdiction in this nation, in most instances despite the fact that adding parties will always in some vague sense complicate the litigation and thereby “prejudice” the party who would rather exclude the to-be-joined party.
Second, I do not see the complication here where Boozer “stands in the shoes” of Hintz and has the same interest in having the Medical Provider defendants held fully responsible for the damages caused by their negligence. If the matter goes to trial, it should be easy to devise an instruction that explains Boozer’s presence in a way that prejudices no one. The only real *799 complication for Hintz is that he. will not be able to settle with the Medical Provider defendants without negotiating a release of some kind with Boozer (and her insurance company). But, is that unfair? It was Hintz himself who made Boozer a co-owner of his claim against the Medical Provider defendants by first securing a judgment against Boozer for damages attributable to them. If Hintz decides that he is willing to accept less than the full value of the damages claim against the Medical Provider defendants in full settlement of the claim, it seems intolerably unfair to suggest that Boozer should be left holding the bag and denied a seat at the table to assure that her liability for those same damages is fairly reduced as well.[11] In short, it is only Boozer who stands to suffer any real (legal) prejudice from the majority’s rule.
Third, the fairness or policy decision that we make at this juncture should not be made in isolation, but with reference to the policy decisions that proceeded this one and landed us here. As with all policy decisions, it should also be made by reference to the basic principles underlying this area of the law. As explained above, to this point we have chosen first principles that favor the plaintiff with every decision. Of course, each prior choice involved a balancing of competing principles, and I do not take issue with any of the prior choices. I do, however, take issue with the majority’s decision, as expounded by Justice Par-iente’s concurrence, that Boozer’s inability to satisfy the judgment is the death knell of the contingent equitable subrogation claim. For all the “equitable considerations” the majority purports to weigh, see concurring op. at 791 (Pariente, J.), this inequitable holding underscores the majority’s failure to account for first principles that demand a different outcome in this case. With the fair apportionment and join-der principles on Boozer’s side of the scale and no first principle on the other, there is only one way the scale can now tip, if it is calibrated evenly: allow the contingent equitable subrogation claim.
IV. CONCLUSION
I would answer the rephrased question in the affirmative and approve the result reached by the Fifth District Court of Appeal. Therefore, I respectfully dissent.
CANADY, J., concurs.

. See generally David G. Owen, The Moral Foundations of Products Liability Law: Toward First Principles, 68 Notre Dame L. Rev. 427, 501 n.324 (1993) (quoting Aristotle for the point that "first principles” (i.e., the reasons for a legal theory) have "a vital influence upon all that follows from them,.. and [are] a means at arriving at a clear conception of many points which are under investigation”) (citation omitted).

. I fully understand that I am blurring important concepts here and that there is a vast difference between apportioning damages . based upon cause (the common law approach) and apportioning damages' based upon fault (the statutory approach in Florida and most states). But, that is a complicated *795 subject that would take us far afield of the question posed in this case.

. Although the Medical Provider defendants’ negligence' has not been established, ”[b]e-cause this case is before the Court on a motion to dismiss, the factual allegations stated in the [plaintiff's medical. negligence] complaint[, as well as the facts alleged in the complaints filed by Boozer and her insurance company seeldng equitable subrogation from the medial providers,] are accepted as true.” S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317, 320 (Fla. 2005).

. See, e.g., Caccavella v. Silverman, 814 So.2d 1145, 1149 (Fla. 4th DCA 2002), review dismissed, 860 So.2d 976 (2003); Letzter v. Cephas, 792 So.2d 481, 488 (Fla. 4th DCA 2001).

. Under basic tort "causation” principles, a person is not generally held liable for injury resulting from the independent negligent actions of a subsequent tortfeasor unless those actions are a reasonably foreseeable consequence of the initial tortfeasor's negligence. See Rawls v. Ziegler, 107 So.2d 601, 605-06 (Fla. 1958) ("Where injury results from two separate and distinct acts of negligence by different persons operating and concurring simultaneously and concurrently, both are regarded as the proximate cause and recovery can be had against either or both. But where... an independent force or act intervenes to bring about a result that the defendant’s negligence would not otherwise have produced, it is generally held that the defendant is liable only where the intervening force or act was reasonably foreseeable.”) (citation omitted).

. Some of these jurisdictions allow the initial tortfeasor to join the medical provider in the original suit, while others require an independent action brought after judgment is rendered against the initial tortfeasor. Flaherty, supra, at § 2[b], In some jurisdictions requiring a separate action, the second trial is permitted to proceed shortly after rendition of the initial verdict—using "the same jury that heard the initial action” or by the court (without a jury). Id.

. Because Florida generally apportions damages based upon fault rather than cause, the jury was not asked to link the initial head injury to the respective breaches of duty by the plaintiff and the initial tortfeasor. See generally § 768.81(2)-(3), Fla. Stat. (2015).

. Justice Pariente correctly notes that Boozer and her insurer initially requested to substitute for the plaintiff. See concurring op. at 789-90 (Pariente, J.). However, the trial court denied that request, and Boozer does not challenge that decision. Boozer .then filed an amended complaint seeking to join with plaintiff in claiming what is sought by the plaintiff's complaint (on the theory that since plaintiff made her legally liable for the same damages plaintiff now seeks from the medical providers, equity should allow her to join the action and protect her rights vis-á-vis the subsequent tortfeasors whose negligence caused the damages for which she is now liable).

. It is for this reason that I disagree with Justice Pariente’s argument that Boozer’s interests will be fully protected as a non-party simply because "the injured plaintiff has a real incentive to obtain the maximum amount against the Medical Provider defendants,” as Justice Pariente argues. See concurring op. at 791 (Pariente, J,). The vast majority of cases settle for less than the "maximum amount” or full value of a claim. That is the nature of compromise and settlement. The allegation in this case is that medical negligence occurred and is the legal cause of plaintiffs permanent brain injury—which would account for most of the $10 million or so in unpaid damages for which Boozer is still responsible. If we (or the plaintiff) had chosen fair apportionment and joinder in the first place, a jury would have already made the determination as to who—between Boozer and the medical providers—is primarily responsible for most of plaintiff's damages. Because we did not—and made Boozer liable for all damages—-Boozer should be allowed to fully participate in the proceeding where that determination will now be made. If she is not, plaintiff and the Medical Provider defendants could compromise and settle for less than full value, as most parties do, dismissing the suit and leaving Boozer still liable for millions of dollars in damages attributable to the negligence of the Medical Provider defendants.