382 So.2d 702 (1980)
UNDERWRITERS AT LLOYDS and Frank A. Stuart, M.D., Petitioners,
v.
CITY OF LAUDERDALE LAKES, a Municipal Corporation, and Jay Clide Miller, Respondents.
No. 57815.
Supreme Court of Florida.
April 3, 1980.
*703 Ricardo J. Cata, of Fleming, O'Bryan & Fleming, Fort Lauderdale, for petitioners.
Edna L. Caruso, West Palm Beach, for respondents.
McDONALD, Justice.
The Fourth District Court of Appeal has certified the following question as being of great public interest:
DOES THE DECISION IN STUART V. HERTZ BAR A SEPARATE LAWSUIT BY THE INITIAL TORTFEASOR AGAINST A SUCCESSOR TORTFEASOR WHO AGGRAVATES THE ORIGINAL INJURIES?
373 So.2d at 946. Pursuant to article V, section 3(b)(3), Florida Constitution, we have accepted jurisdiction.
Paula Bissonette sustained back injuries in an automobile accident caused by an employee of the City of Lauderdale Lakes. Allegedly, her injuries were exacerbated by her doctor, who, it is claimed, negligently performed an unsuccessful laminectomy and fusion of Ms. Bissonette's spine.
After settling with the victim for all injuries flowing from the accident and her treatment thereof, the City of Lauderdale Lakes instituted an action for indemnification against the doctor. Because of our decision in Stuart v. Hertz, 351 So.2d 703 (Fla. 1977), the city attempted to amend its complaint to sue the doctor under a theory of subrogation. The trial court denied the city's motion to amend and granted summary judgment for the defendant insurance company. An appeal to the Fourth District Court of Appeal ensued. The district court reversed, distinguishing the instant controversy from Hertz.
In Hertz, this Court held that third-party indemnity actions against subsequent tortfeasors are inappropriate. That decision was premised on the traditional doctrine that an initial tortfeasor may not benefit *704 from his own wrong by bringing a third-party claim against a doctor whose alleged malpractice aggravated the victim's injuries. Our concern was that such third-party claims would hamper the litigation process for the aggrieved victim by attaching "a complex malpractice [case] in order to proceed with a simple personal injury suit." 351 So.2d at 706. Allowing such expansion would foreclose the victim's ability to control the nature and course of the suit.
The initial tortfeasor is subject to the total financial burden of the victim's injuries, including those directly attributable to a doctor's malpractice. But is it fair and equitable for such a tortfeasor to have to pay a sum greater than should have flowed from an accident without thereafter giving him some recourse against the agency exacerbating his liability? The instant situation compels some form of restitution to preclude a negligent doctor from escaping the responsibilities for his actions, especially as here where the original injuries were minor as compared with Ms. Bissonette's current disabilities. We agree with the district court that equity and good conscience should afford the initial tortfeasor a remedy.
Having noted in Hertz that the doctrines of indemnity and contribution among subsequent tortfeasors are not cognizable under Florida law, we turn to subrogation. Subrogation is an equitable doctrine whereby the initial tortfeasor/defendant is placed "in the shoes" of the plaintiff. 30 Fla.Jur. Subrogation § 11. It is a legal device "founded on the proposition of doing justice without regard to form, and was designed to afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another. Trueman Fertilizer v. Allison, Fla., 81 So.2d 734." Ulery v. Asphalt Paving, Inc., 119 So.2d 432 (Fla. 1st DCA 1960); American Home Assurance Co. v. City of Opa Locka, 368 So.2d 416 (Fla. 3d DCA 1979); Allstate Life Insurance Co. v. Weldon, 213 So.2d 15 (Fla. 3d DCA 1968).
An action brought in subrogation would eliminate the concerns noted in Hertz. A subrogation suit is a separate, independent action against a subsequent tortfeasor by the initial tortfeasor. The injured party, having received full compensation for all injuries, is not a party to the litigation and is spared the trauma of an extensive malpractice trial. The initial tortfeasor is simply trying to recoup his losses that in fairness should be shared with a negligent doctor. Under this doctrine the financial burden is equitably apportioned among the responsible parties, and negligent doctors can no longer escape liability for their actions.
In answering the certified question in the negative, we have aligned Florida with jurisdictions relying upon subrogation as a remedy of affording an initial tortfeasor equitable apportionment of liability when a victim's injuries have been negligently aggravated by an attending doctor. See Greene v. Waters, 260 Wis. 40, 49 N.W.2d 919 (1951); Fietzer v. Ford Motor Company, 383 F. Supp. 33 (E.D.Wis. 1974); Fisher v. Milwaukee Electric Ry. and Light Company, 173 Wis. 57, 180 N.W. 269 (1920); Clark v. Halstead, 276 App.Div. 17, 93 N.Y.S.2d 49 (App.Div. 1949). We therefore hold that the Fourth District Court of Appeal correctly found that the City of Lauderdale Lakes' subrogation claim states a cause of action against the negligent doctor.
The cause is remanded for further proceedings consistent with this opinion.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD and OVERTON, JJ., concur.