458 So.2d 789 (1984)
MUNSON & ASSOCIATES, INC., Bruce F. Beshara, and Reliance Insurance Company, Appellants,
v.
DOCTORS MERCY HOSPITAL, d/b/a Brookwood Community Hospital, Inc., Azhar Ali, M.D. and Richard J. Bagby, M.D., Appellees.
No. 83-1697.
District Court of Appeal of Florida, Fifth District.
October 11, 1984.
Rehearing Denied November 14, 1984.
*790 Greg W. Sahlsten and Sutton G. Hilyard, Jr., of Pitts, Eubanks, Hannah, Hilyard & Marsee, P.A., Orlando, for appellants.
Larry J. Townsend, of Maguire, Voorhis & Wells, P.A., Orlando, for appellee Bagby.
Timothy I. Mize, of Parker, Johnson, Owen & McGuire, P.A., Orlando, for appellee Brookwood.
Martin B. Unger and Paul H. Bowen, of Swann & Haddock, P.A., Orlando, for appellee Ali.
SHARP, Judge.
Munson & Associates, Inc. (Munson), Bruce Beshara, and Reliance Insurance Company (Reliance) appeal from a final summary judgment denying their claim for equitable subrogation against claimed subsequent tortfeasors who had exacerbated the plaintiff's (Coleman's) injuries. Before trial involving all of these parties, the appellants entered into a release and settlement agreement with Coleman which expressly reserved Coleman's rights to sue the remaining defendants.[1] We affirm.
Coleman was injured in an automobile accident involving Beshara, the driver of the other vehicle. Munson owned the vehicle and Reliance was the liability insurer. Coleman sued these three parties initially, and later joined as defendants, Doctors Mercy Hospital, Inc., Azhar Ali, M.D., and Richard Bagby, M.D., for malpractice in treating his injuries following the accident, alleging that they greatly exacerbated his injuries.
Appellants cross-claimed against the health care providers on grounds of equitable subrogation. This doctrine has been recognized and sanctioned in Florida. In City of Lauderdale Lakes v. Underwriters at Lloyds, 373 So.2d 944 (Fla. 4th DCA 1979), the district court reversed a summary judgment for a doctor and certified this issue to the Florida Supreme Court. The Court affirmed stating:
The initial tortfeasor is subject to the total financial burden of the victim's injuries, including those directly attributable to a doctor's malpractice. But is it fair and equitable for such a tortfeasor to have to pay a sum greater than should have flowed from an accident without thereafter giving him some recourse against the agency exacerbating his liability? The instant situation compels some form of restitution to preclude a negligent doctor from escaping the responsibilities for his actions, especially as here where the original injuries were minor as compared with Ms. Bissonette's current disabilities. We agree with the district court that equity and good conscience should afford the initial tortfeasor a remedy.
Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702, 704 (Fla. 1980).
*791 In Underwriters, unlike this case, the first tortfeasor fully satisfied the liability of the health care provider to the injured plaintiff before filing suit against the provider on equitable subrogation grounds. The appellees argue that no right of equitable subrogation should arise on behalf of the initial tortfeasor until he has satisfied or paid the full extent of all of the plaintiff's injuries.
The traditional rules of subrogation support this view. It appears to be "[G]enerally the rule that where no other basis for equity jurisdiction is present, the right of subrogation does not exist until the entire obligation is discharged... ." Ulery v. Asphalt Paving, Inc., 119 So.2d 432, 437 (Fla. 1st DCA 1960); Furlong v. Leybourne, 138 So.2d 352, 356 (Fla. 3d DCA 1962) ("the right to be subrogated to the rights and securities of the creditor extends to anyone paying any part of a debt of another provided the entire debt is paid."); Cappucio, Subrogation in Florida, 21 U.Miami L.Rev. 240, 242 (1966) ("As a general rule, no degree of subrogation to the rights of the creditor will be granted until the creditor's claim against the principal debtor has been paid in full."); see also 73 Am.Jur.2d Subrogation § 30 (1974); 12 Fla.Jur.2d, Contribution, Indemnity and Subrogation § 22 (1979); 83 C.J.S. Subrogation § 10 (1953).
Strictly applied in a case similar to this one, those rules might defeat the right of an initial tortfeasor to obtain a remedy. Appellants argue that financially they could not pay for the full amount of Coleman's injuries in this case, a considerable amount of which they claim resulted from inadequate medical care and diagnosis. We are aware that the supreme court in Underwriters was breaking new ground, and that the court did not say that the manner in which the claim for equitable subrogation arose in that case, two successive lawsuits, was the sole and only way in which the remedy of equitable subrogation could be achieved.[2]See Greene v. Waters, 260 Wis. 40, 49 N.W.2d 919 (1951).
However, in this case the appellants settled only their own liability to Coleman and expressly left open Coleman's right to pursue his claims against the health care providers. Subsequently, Coleman also settled with the doctors and the hospital.[3] We think the general release in this case bars the appellants' rights to pursue the remedy of equitable subrogation against the health care providers. Accordingly, the judgment appealed is
AFFIRMED.
ORFINGER and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] The release provided:

[I]t is further agreed that this General Release releases only BRUCE FERRIS BESHARA, MUNSON & ASSOCIATES, INC. and RELIANCE INSURANCE COMPANY, and that this General Release in no way releases any other parties to that certain aforesaid civil action filed in the 9th Judicial Circuit, in and for Orange County, Florida, bearing Case No. CI 80-4756.
[2] Subrogation is a creature of equity, designed to do justice without regard to form, Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702 (Fla. 1980); Allstate Insurance Company v. Metropolitan Dade County, 436 So.2d 976 (Fla. 3d DCA 1983); see generally 12 Fla.Jur.2d Contribution, Indemnity and Subrogation, §§ 17-19 (1979). The reason underlying the "cash-out" rule is protection of the creditor. As stated in Fowler v. Lee, 106 Fla. 712, 143 So. 613, 614 (1932):

As a general rule, one cannot claim it [subrogation], unless the demand of the creditor is paid in full, as subrogation pro tanto may impair the interest of the creditor in respect to the unpaid balance. This rule is for the benefit of the original creditor, and does not apply where the balance of the debt has been satisfied by the principal or in some other manner. In such a case, subrogation arises in favor of the one who paid the part of the debt against the debtor, who received the benefit of such payment. (Citations omitted).
[3] On November 1, 1983, Coleman settled with Bagby for $100,000.00 and with Brookwood Hospital for $25,000.00, and on November 8, 1983, he settled with Ali for $100,000.00. Subsequently, Coleman voluntarily dismissed his action against the appellees.