COHEN, J.
After being held liable for over $11 million in a personal injury action, Appellants, Allstate Insurance Company and Emily Boozer, sought equitable subrogation from Appellees Holmes Regional Medical Center (“HRMC”); Basil Theodotou, M.D.; Basil Theodotou, M.D., P.A.; David Pack-ey, M.D.; and Neurology Clinic, P.A. (collectively “the Medical Providers”). Appellants claim that the Medical Providers are subsequent tortfeasors who are responsible for a substantial portion of the damages in the underlying personal injury action. The trial court dismissed Appellants’ complaint for equitable subrogation with prejudice, leading to this appeal.
The issue we address is whether, under Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702 (Fla.1980), an initial tortfeasor or her insurer may assert an equitable subrogation claim against a subsequent tortfeasor when: (1) the initial tortfeasor was precluded from bringing the subsequent tortfeasor into the original personal injury action under Stuart v. Hertz, 351 So.2d 703 (Fla.1977); (2) judgment was entered against the initial tort-feasor for the full amount of the injured person’s damages, regardless of the initial tortfeasor’s portion of the fault; and (3) that judgment has not been completely paid by the initial tortfeasor or her insurer. We conclude that, under the circumstances presented in this case, equity dictates that Appellants be allowed to seek equitable subrogation from the Medical Providers. Accordingly, we reverse and certify the question to the Florida Supreme Court as one of great public importance.
I.
Benjamin Edward Hintz was riding his scooter when he sustained head injuries as a result of an accident with Appellant Emily Boozer. Boozer was driving her father Otto’s car at the time of the accident; Otto was insured by Appellant Allstate. Following the accident, Hintz was treated at HRMC, where, according to Appellants’ allegations, his injuries were severely exacerbated by medical negligence.
Soon thereafter, Appellee Douglas Stal-ley, as guardian of Hintz’s property, sued Emily and Otto Boozer for the damages resulting from the accident. In that action, Stalley successfully argued that the doctrine espoused in Stuart v. Hertz Corp., 351 So.2d 703 (Fla.1977), precluded the Boozers from presenting evidence that medical negligence was a contributing cause of Hintz’s injuries. The Boozers were ultimately held liable for all of Hintz’s damages — including those allegedly caused or aggravated by the Medical Providers’ negligence. The lawsuit resulted in a $14,905,585.29 verdict for Stalley, which was reduced by twenty-five percent, to $11,179.188.98, due to Hintz’s comparative negligence. Judgment was entered in favor of Stalley and against the Boozers in August 2012. Allstate then paid Stalley $1.1 million, its policy limit. The remainder of the judgment remains unpaid.
*165 After the personal injury verdict was rendered, but before final judgment was entered, Stalley filed a separate medical malpractice lawsuit against the Medical Providers. He sought recovery for the same injuries involved in the initial lawsuit against the Boozers. Later, he also filed a bad-faith action against Allstate, which remains pending.
After Appellants were granted leave to intervene in Stalley’s medical-malpractice lawsuit, they each filed complaints in that case, claiming that they were entitled to equitable subrogation from the Medical Providers. The Medical Providers moved to dismiss the complaints, arguing that Appellants were barred from seeking equitable subrogation because they had not paid the entirety of Hintz’s damages.[1] The trial court granted the Medical Providers’ motion to dismiss and dismissed Appellants’ complaints with prejudice. This appeal followed.
II.
In Stuart v. Hertz Corp., 351 So.2d 703 (Fla.1977), the Florida Supreme Court held that an initial, active tortfeasor may not file a third-party complaint for indemnity against a treating physician whose subsequent medical negligence aggravated the plaintiffs injuries. See id. at 706. The Court reasoned that an active tortfea-sor should not be permitted to turn a simple personal injury action into a complex medical malpractice lawsuit. Id. Instead, the plaintiff should be allowed to “choose the time, forum and manner in which to press his claim”:
The choice of when and whether to sue his treating physician for medical malpractice is a personal one which rightfully belongs to the patient. A complete outsider, and a tortfeasor at that, must not be allowed to undermine the patient-physician relationship, nor make the plaintiffs case against the original tort-feasor longer and more complex through the use of a third-party practice rule which was adopted for the purpose of expediting and simplifying litigation.
Id. Stuart makes clear that an injured party can choose to sue only the initial tortfeasor and seek recovery for all injuries resulting from both torts. See Rucks v. Pushman, 541 So.2d 673, 675 (Fla. 5th DCA 1989). Or the injured party can first recover from the initial tortfeasor for the injuries caused solely by the original tort and then seek recovery from the subsequent tortfeasors for the injuries caused, or aggravated, by their negligence. Id. But in no case can the victim “recover from the initial tortfeasor for injury caused by the negligent health care providers and also recover for the same injuries from the health care providers.” Id. In other words, victims are not permitted to obtain double recovery.
As a corollary, depending on how the injured party chooses to proceed, an initial tortfeasor may be held liable for the entirety of the plaintiffs damages, even if a subsequent independent tortfeasor is partially — or even mostly — responsible. See Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702, 704 (Fla. 1980) (“The initial tortfeasor is subject to the total financial burden of the victim’s *166 injuries, including those directly attributable to a doctor’s malpractice.”). As recognized in Underwriters, this creates an injustice: The initial tortfeasor is held liable for the totality of the plaintiffs damages, while the doctors are not held accountable at all for their actions. Id. To rectify this injustice, the Court held that the proper remedy for initial tortfeasors affected by Stuart is equitable subrogation. See id.
Subrogation is a legal device “founded on the proposition of doing justice without regard to form, and was designed to afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another.” Id. (citations omitted). Subrogation suits eliminate the concerns noted in Stuart because they are separate, independent actions where the injured party, having already received compensation for all of his or her injuries, is not a party and “is spared the trauma of an extensive malpractice trial.” Id. The initial tortfeasor, however, is “placed ‘in the shoes’ of the plaintiff’ and is able to “recoup his losses that in fairness should be shared with a negligent doctor.” Id.
III.
This case presents the precise situation contemplated by Underwriters. Under Stuart, Stalley made a decision to recover from only the initial tortfeasor. Boozer was not permitted to file a third-party complaint against the Medical Providers, nor was she able to introduce evidence of the Medical Providers’ negligence so that the relative portions of fault could be determined. As such, she was unable to shift any portion of liability to the Medical Providers and was held liable for the entirety of Hintz’s damages.
Despite this, Appellees argue that Appellants are not entitled to equitable sub-rogation because they have not paid the entirety of the judgment. In response, Appellants contend that an initial tortfea-sor’s right to equitable subrogation is triggered when the victim has been fully compensated or judgment is entered against the initial tortfeasor for the entirety of the victim’s injuries. Neither party has provided us with case law that is directly on point. Much of the language relied upon by Appellants is dicta. See, e.g., Caccavella v. Silverman, 814 So.2d 1145, 1147 (Fla. 4th DCA 2002) (“When an initial tortfeasor is held liable for the entirety of the plaintiffs damages, his remedy is an action for equitable subrogation against the subsequent tortfeasors.”); Nat’l Union Fire Ins. Co. v. Se. Bank, 476 So.2d 766, 767 (Fla. 3d DCA 1985) (“A right to subrogation does not arise until judgment is entered or payment has been made.”).
The cases cited by Appellees, on the other hand, are all distinguishable. Most involve situations where the party seeking equitable subrogation settled with the victim for only the portion of the injury directly attributable to it. See, e.g., Munson & Assocs., Inc. v. Doctors Mercy Hosp., 458 So.2d 789 (Fla. 5th DCA 1984). Many of the cases cited by Appellees do not involve a Stuart initial tortfeasor/subse-quent tortfeasor situation. The main case relied upon by Appellees, Dade County School Board v. Radio Station WQBA 731 So.2d 638, 646 (Fla.1999), is distinguishable in both respects.
In Radio Station WQBA, the Florida Supreme Court announced that equitable subrogation is “generally appropriate” when:
(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would *167 not work any injustice to the rights of a third party.
Id. at 646 (emphasis added). The Court has never addressed what exactly a subro-gee must do to satisfy factor (4). It thus makes sense to look at why the Court might have included that factor in the first place.
Presumably, factor (4) addresses the problem that occurred in cases like Mun-son. See 458 So.2d 789. There, “the appellants settled only their own liability to [the plaintiff] and expressly left open [the plaintiffs] right to pursue his claim against the health care providers.” Id. at 791. Of course equitable subrogation was not appropriate in that case, because the appellants paid for only their portion of the liability and no liability was left to be apportioned. But that is not the situation here.
Here, the Boozers did not settle with Stalley, nor were they held liable, for only their portion of liability. Rather, they were held liable for all of Hintz’s injuries resulting from the accident. Judgment was entered against them for over $11 million. That judgment is fully enforceable by Stalley and has various severe consequences for Boozer. If Boozer was not solely liable, then, in fairness, she ought to be able to seek subrogation from the subsequent tortfeasors. Allstate should also have the opportunity to seek equitable subrogation because it has potentially paid more than its fair share. Put simply, we agree with Appellants that the right to equitable subrogation arises when payment has been made or judgment has been entered, so long as the judgment represents the victim’s entire damages.
As previously noted, much of the case law cited by the parties is distinguishable front this case. Still, case law suggests that the full-payment requirement is not as absolute as Appellees believe. As Appellants point out, Florida courts have often allowed subrogation claims to proceed on a contingent basis, even where full payment had not been made. See, e.g., Gortz v. Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams, 769 So.2d 484, 487-88 (Fla. 4th DCA 2000) (holding that law firm could bring a subrogation claim in a third-party complaint before judgment was entered against it or payment was made). We see no reason why Appellants’ subro-gation claim in this case should not be allowed to proceed in a similar manner.[2]
Moreover, the logical conclusion to Ap-pellees’ argument that full payment needs to be made is that Appellants would need to pay not only the $11 million listed in the judgment, but also the approximately $3 million in damages caused by Hintz’s own negligence. In fact, at oral argument, Ap-pellees maintained that Appellants needed to pay Stalley the entire verdict, i.e., approximately $14 million, rather than the $11 million that represented the damages caused by Boozer and the Medical Providers. We find that argument unpersuasive, as Appellants are not seeking equitable subrogation from Stalley.
Our holding is consistent with the language and policy rationales found in Underwriters. There the Court made clear that equitable subrogation is a doctrine “founded on the proposition of doing justice without regard to form.” Underwriters, 382 So.2d at 704. By definition, equity favors justice and fairness over formalistic legal rales. See Fla. Jur.2d Equity §§ 1-2. Appellees ask us to do the opposite of equity: follow a rigid rule and disregard what seems logical and just. *168 Surely, the injured victim deserves to be made whole. This is a central policy goal of Stuart,[3] But the policy goal of Underwriters — to ensure that liability is correctly apportioned and Boozer is not held liable for more than her fair share — must also be considered. It is undisputed that Boozer cannot pay the judgment, and Allstate has already paid its policy limits. Equity would not leave Appellants without a remedy in this situation. We believe that the appropriate way to address both of these policy concerns is to allow Appellants to seek equitable subrogation from the Medical Providers.[4]
IV.
In sum, the trial court erred in dismissing Appellants’ complaints for equitable subrogation. We certify the following question to the Florida Supreme Court, under Florida Rule of Appellate Procedure 9.030(a) (2) (A) (v):
Is a party that has had judgment entered against it entitled to seek equitable subrogation from a subsequent tort-feasor when the judgment has not been fully satisfied?
REVERSED; QUESTION CERTIFIED.
PALMER, J., concurs.
BERGER, J., concurs in part and dissents in part, with opinion.

. In support of its motion to dismiss, the Medical Providers also asserted that the statute of limitations had expired, and that Appellants failed to comply with various medical malpractice statutory requirements. The Medical Providers abandoned these arguments on appeal. However, because the trial court did not state which ground it was basing its dismissal on, and because we are required to affirm if there is any basis to do so, we find no merit in any of the other arguments that the Medical Providers asserted below.

. Particularly because, under Stuart, Boozer did not have the opportunity to assert a contingent claim for equitable subrogation in the initial lawsuit.

. Notably, the other central policy goals of Stuart were to: (1) allow the plaintiff to choose the manner of the litigation; and (2) spare the plaintiff the "trauma” of an “extensive” medical malpractice trial. Here, the plaintiff chose the manner of the litigation. He elected to sue only the Boozers, presumably knowing that they could not afford to pay a multi-million dollar judgment. He then chose to sue the Medical Providers, leading to, ironically, his involvement in what could become an "extensive” medical-malpractice trial. The intervention of the initial tortfeasor into that lawsuit is a consequence of these choices.

. We are also unpersuaded by Appellees' contention that Appellants were required to obtain a release of the Medical Providers from Stalley. This requirement should be limited to cases involving settlements.