QUINCE, J.
This case is before the Court for review of the decision of the Fifth., District Court of Appeal in Allstate Insurance Co. v. Theodotou, 171 So.3d 163 (Fla. 5th DCA 2015). In its decision, the district court ruled upon the following question which the court certified to be of great public importance:
IS A PARTY THAT HAS HAD JUDGMENT ENTERED AGAINST IT ENTITLED TO SEEK EQUITABLE SUBROGATION FROM A SUBSEQUENT TORTFEASOR WHEN THE JUDGMENT has not BEEN fully SATISFIED?
Id. at 168. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we answer the certified question in the negative and quash the decision, of the Fifth District.
FACTS AND PROCEDURAL HISTORY
Benjamin Edward Hintz sustained head injuries when his scooter collided with an automobile driven' by Respondent Emily Boozer. Theodotou, 171 So.3d at 164. The car belonged to Boozer’s father, Otto, who was insured by Respondent Allstate. Id. Hintz received medical treatment 'at Holmes Regional Medical Center (medical provider defendants) where, according to Respondents, his injuries were “exacerbated by medical negligence.” Id.
Petitioner Douglas Stalley, guardian of Hintz’s property, filed suit against Emily and Otto Boozer for damages. Id. Stalley successfully argued that Stuart v. Hertz Corp., 351 So.2d 703 (Fla. 1977), “precluded the Boozers from presenting evidence that medical negligence was a contributing causé of Hintz’s injuries.” Id. The jury found the Boozers liable for Hintz’s injuries and' awarded Stalley $14,905,585.29, which was reduced by twenty-five percent to $11,179,188.98 due to Hintz’s, comparative negligence. Id. In August 2012, judgment was entered and Allstate paid $1.1 million, its policy limit. Id. The Boozers have not paid the remainder of the judgment. Id.
Following the personal injury verdict, Stalley filed a separate medical malpractice lawsuit against the medical provider defendants, who are also Petitioners in this proceeding. Id. at 165. Stalley “sought recovery for the same injuries involved in the initial lawsuit against the Boozers.”[1] Id.
Respondents Allstate and Emily Boozer were granted leave to intervene in the lawsuit, and both parties filed complaints claiming they 'were entitled to equitable subrogation from the medical provider dé-fendants. Id. In response, the medical provider defendants sought dismissal of. the complaints because neither Allstate nor Boozer had paid Hintz’s damages in full. Id. The trial court agreed with the medical provider defendants and dismissed Respondents’ complaints with prejudice. Id.
*783 On appeal, the Fifth District considered whether
[A]n initial tortfeasor or her insurer may assert an equitable subrogation claim against a subsequent tortfeasor when: (1) the initial tortfeasor was precluded from bringing the subsequent tortfeasor into the original personal injury action under Stuart v. Hertz, 351 So.2d 703 (Fla. 1977); (2) judgment was entered against the initial tortfeasor for the full amount of the injured person’s damages, regardless of the initial tortfeasor’s portion of fault; and (3) that judgment has not been completely paid by the initial tortfeasor or her insurer.
Id. at 164. In reversing the trial court’s order, the district court found that “the right to equitable subrogation arises when payment has been made or judgment has been entered, so' long as the judgment represents the victim’s entire damages.” Id. at 167. The court reasoned that “equity favors justice and fairness over formalistic legal rules,” and that the need for liability to be correctly apportioned must be considered along with the victim’s need to be made whole. Id. at 167-68. Recognizing that Florida courts have allowed subrogation claims to proceed on a contingent basis, the district court saw “no reason why Appellants’ subrogation claim in this case should not be allowed to proceed in a similar manner.” Id. at 167.
Petitioners Holmes Regional Medical Center and Douglas. Stalley now argue that under this Court’s long-standing precedent, an initial tortfeasor only has a sub-rogation claim against a subsequent tort-feasor after fully compensating the injured party. In response, Allstate and Emily Boozer contend that equitable subrogation is a flexible doctrine and equity requires that liability be properly apportioned among all negligent parties. Because the certified question presents a pure issue of law, the standard of review is de novo.
Special v. West Boca Med. Ctr., 160 So.3d 1251, 1255 (Fla. 2014).
ANALYSIS
In Stuart, this Court addressed “whether or not an active tortfeasor in an automobile accident may bring a third party, action for indemnity, against a physician for damages directly attributable to malpractice which aggravated the plaintiffs injuries.” 351 So.2d at 704. The respondent in that case, Hertz, owned the automobile that collided with an automobile belonging to Mrs. Johnson. Id Mrs. Johnson suffered orthopedic injuries from the crash and underwent surgery performed by the petitioner, Dr. Stuart. Id. During the surgery, Dr. Stuart accidentally severed Mrs. Johnson’s carotid artery, which caused a neurological disability. Id. When Mrs. Johnson filed suit against Hertz, Hertz sought indemnity for any damages recovered because of the neurological injuries. Id. Dr. Stuart moved to dismiss the third party complaint, which the trial court denied. Id.
In reversing the trial court’s order, we held that an initial tortfeasor is prohibited from presenting evidence of subsequent medical malpractice or filing a third-party complaint for alleged aggravation of injuries by medical providers. Id. at 706. We stated:
An active tortfeasor should not be permitted to confuse and obfuscate the issue of his-liability by forcing the plaintiff to concurrently litigate a complex malpractice suit in order to proceed with a simple personal injury suit. To hold otherwise would in effect permit a defendant to determine the time and manner, indeed the appropriateness, of a plaintiffs action for malpractice. This decision eliminates the traditional policy of allowing the plaintiff to choose the time, *784 forum and manner in which to press his claim, (citation omitted).
The choice of when and whether to sue his treating physician for medical malpractice is a personal one, which rightfully belongs to the patient. A complete outsider, and a tortfeasor at that, must not be allowed to undermine the patient-physician relationship, nor make the plaintiffs case against the original tort-feasor longer and more complex through the use of a third-party practice rule which was adopted for the purpose of expediting and simplifying litigation.
Id. We also expressed concern about “confusion and nonuniformity of application by the lower courts,” complication of the issues, and prolonging the litigation. Id.
Justice Boyd concurred in part and dissented in part. Id. at 707. He explained:
I dissent to the view that any active tortfeasor sued should be unable to shift an equitable portion of the judgment obligation to others causing or increasing the injuries and damages.
Although respondent Hertz Corporation must not be permitted to join petitioner as a third party defendant, it should be permitted to allege and prove any malpractice and have the judgment amount reduced to the extent the malpractice contributed to the total amount of damages. It is fundamentally unfair and unjust to require Hertz to pay for the negligence of petitioner, if any. If the injured person, Mrs. Johnson, does not wish to join her doctor in the suit that should be her privilege, but she should not recover from Hertz the full damages unless Hertz is the only tortfeasor.
Id. at 707-08.
Justice Overton also dissented and wrote:
A plaintiff should not' be allowed to recover for the same wrong from both tortfeasors, which may be possible under the majority opinion as I understand it. Clearly one tortfeasor should not be responsible for all the injuries without the right of indemnification for the identifiable consequences of another’s wrong.
Id. at 708.
We later addressed the concerns raised by Justice Boyd and Justice Overton in Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702 (Fla. 1980). In Lloyds, the City of Lauderdale Lakes settled with a victim for all injuries flowing from an automobile accident and for the treatment thereof. Id. at 703. Following settlement, the City sought indemnification from the doctor. Id. Due to this Court’s decision in Stuart, the City attempted to amend its complaint and sue the doctor under a theory of subrogation. Id. “The trial court denied the city’s motion to amend and granted summary judgment for the defendant insurance company.” Id. The Fourth District reversed the trial court and certified the following question as one of great public interest:
DOES THE DECISION IN STUART V. HERTZ BAR A SEPARATE LAWSUIT BY THE INITIAL TORTFEA-SOR AGAINST A SUCCESSOR TORTFEASOR WHO AGGRAVATES THE ORIGINAL INJURIES?
Id.
In answering the certified question in the negative, we considered whether “it' is fair and equitable for such a tortfeasor to have to pay a sum greater than should have flowed from an accident without thereafter giving him some recourse against the agency exacerbating his liability?” Id. at 704. In order to “preclude a negligent doctor from escaping the responsibilities for his actions,” we provided the remedy of equitable subrogation. Id. We explained that subrogation is an equitable doctrine that allows the initial tortfeasor to be placed in “the shoes of’ the plaintiff. Id. (citing 30 Fla. Jur. Subrogation § 11). It is *785 a legal device “founded on the proposition of doing justice without regard to form, and was designed to afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another.” Id. (citations omitted). Additionally, “a subrogation suit is a separate, independent action against a subsequent tortfeasor by the initial tort-feasor. The injured party, having received full compensation for all injuries, is not a party to the litigation and is spared the trauma of an extensive malpractice trial.” Id, In so holding, we “aligned Florida with jurisdictions relying upon subrogation as a remedy of affording an initial tortfeasor equitable apportionment of liability when a victim’s injuries have been negligently aggravated by an attending doctor.” Id. (citations omitted). -
We later expounded on what was required for an initial tortfeasor to assert an equitable subrogation claim in Dade County School Board v. Radio Station WQBA, 731 So.2d 638 (Fla. 1999), where we held that equitable subrogation is “generally appropriate” when five factors are satisfied:
(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party.
Id. at 646. In that case, we resolved a conflict between the Third District in Dade County School Board v. Radio Station WQBA, 699 So.2d 701 (Fla. 3d DCA 1997) and the Fifth District in West American Insurance Co. v. Yellow Cab Co. of Orlando, Inc., 495 So.2d 204 (Fla. 5th DCA 1986). In WQBA, the Third District had concluded that partial payment was enough to allow a remedy of equitable subrogation. 699 So.2d at 703. The Fifth District in West American, however, stated that the party claiming subrogation had to pay the debt in full. 495 So.2d at 207. Because we “disagree[d] with the [Third District’s] liberal application of the equitable subrogation doctrine,” we approved the decision of the Fifth District. WQBA, 731 So.2d at 646.
We pointed out that, in West American, “central to the court’s application of equitable subrogation was the fact that West American secured a release which included Yellow Cab and that West American paid one hundred percent of the debt.” WQBA, 731 So.2d at 647. We reasoned that, because equitable subrogation puts “the person discharging- the debt ... in the shoes of the person whose claim has been discharged, [it] would only be proper if it can be established that [WQBA] paid the entire debt owed to a particular plaintiff and that in doing so, [WQBA] obtained a release. for DCSB [Dade County School Board] from the plaintiff.” Id.
Our decision in WQBA was consistent with long-established law that ‘[u]ntil the obligation is fully discharged, the obligee is himself entitled to enforce the balance of his claim, and the person' whose property has been used in discharging only a part of the claim is not entitled to occupy his position.” Restatement (First) of Restitution § 162 com. c. (Am. Law Inst. 1937). Other district courts have held similarly. See U.S. Fid. & Guar. Co. v. Essex Ins. Co., 188 So.3d 906, 907 (Fla. 1st DCA 2016) (no equitable subrogation where excess insurer “did not pay the entire settlement in the underlying tort litigation”); Goldberg v. State Farm Auto. Mut. Ins. Co., 922 So.2d 983 (Fla. 4th DCA 2005) (insurer that paid insured’s passenger not entitled to subrogation against second driver where it did not show that it paid all of the passenger’s damages and obtained release of second driver); Collins v. Wil- *786 cott, 578 So.2d 742, 744 (Fla. 5th DCA 1991) (“[T]he right of subrogation does not exist until one tort-feasor has completely discharged the obligation of all tort-feasors.”); Fla. Farm Bureau Ins. Co. v. Martin, 377 So,2d 827 (Fla. 1st DCA 1979) (no subrogation for, fire insurer .where insured recovered less from tortfeasor than insured’s total damages).
In the instant case, the Fifth District distinguished cases cited- by Petitioners for the proposition that equitable subrogation requires full payment by stating that the cases either (1) involved settlements “where the party seeking equitable subro-gation settled with the victim for only the portion of the injury directly attributable to it,” or (2) did “not involve a Stuart initial tortfeasor/subsequent tortfeasor situation” where " the victim’s injuries were made worse by a doctor’s negligence. Theodotou, 171 So.3d at 166. In doing so, the Fifth District ignored the underlying principle of those cases: that the victim had been fully compensated by the initial tortfeasor before the initial tortfeasor could assert an equitable subrogation claim. While there was no settlement offer in this case, in order for the Respondents to “step in[to] the shoes” of the plaintiff, they must first fully discharge the debt. Although Respondents argue that some district courts have held that an equitable subrogation claim arises once judgment has been entered, that language, as acknowledged by the Fifth District, is dicta. See, e.g., Caccavella v. Silverman, 814 So.2d 1145, 1147 (Fla. 4th DCA 2002) (“When an initial tortfeasor is held liable for the entirety of the plaintiffs, damages, his remedy is an action for equitable subrogation against the subsequent tortfeasor.”); Nat’l Union Fire Ins. Co. v. Se. Bank, N.A., 476 So.2d 766, 767 (Fla. 3d DCA 1985) (“A right to subrogation does not arise until judgment is entered or payment has been made,”).
Because a claim of equitable subro-gation requires payment of the entire debt, Respondent Boozer’s argument that she may be substituted for Hintz in the malpractice action is meritless, as she has paid no part of the $11 million judgment against her. Additionally, Respondent Allstate’s argument that it has a claim by virtue of its $1.1 million dollar payment fails, as partial payment does not discharge the entire debt to the injured party and therefore does not give rise "to an equitable subrogation claim. See Cleary Bros. Constr. Co. v. Upper Keys Marine Constr., Inc., 526 So.2d 116, 117 (Fla. 3d DCA 1988) (“No rights of subrogation arise from a partial satisfaction of an obligation.”); see also Rubio v. Rubio, 452 So.2d 130, 132 (Fla. 2d DCA 1984) (“[T]he insurer has no right as against the insured where the compensation received by the insured is less than his loss.” quoting Couch on Insurance, 2d § 61.64 (rev. ed. 1983)). This is because “the creditor cannot equitably be compelled to' split his or her securities and give .up control of any part until he or she is fully paid.” 16 Couch on Ins. 3d § 223:22 (Rev. ed. 2016).
Furthermore, allowing Petitioner Stalley, on behalf of Hintz, to pursue a medical malpractice claim against the medical provider defendants-without Respondents’ intervention would neither violate the doctrine of electiqn of remedies nor permit Hintz to obtain a double recovery. Although the Fifth District" did not expressly" use the term “election of remedies,” it was at the foundation of the court’s reasoning in thé instant case:
Stuart, makes clear that an injured party can choose to sue only the initial tortfea-sor and seek recovery for all the injuries resulting from both torts- ... Or the injured party can first recover from the initial tortfeasor for the injuries caused solely by the original tort and then seek *787 recovery from the subsequent tortfea-sors for the injuries caused, or aggravated by, their negligence.
Theodotou, 171 So.3d at 165 (emphasis added).
Under Stuart, Stalley made a decision to recover from only the initial tortfeasor.
Id. (emphasis added) (citations omitted).
Here, the plaintiff chose the manner of the litigation.. He elected to sue only the Boozers, presumably knowing that they could .not afford to pay a multi-million dollar judgment. He then chose to sue the Medical provider defendants, leading to, .ironically, his involvement in what could become an “extensive” medical-malpractice trial. The intervention of the initial tortfeasor into that lawsuit is a consequence of these choices.
Id. at 168 n.3 (emphasis added). The Fifth District _ here inaccurately described Hintz’s decision to sue Boozer first as “a decision to recover from only the initial tortfeasor.” Id. at 166. However, a plaintiff is not precluded from suing an initial tort-feasor before suing a negligent medical provider. See, e.g., Barnes v. Meece, 530 So.2d 958, 959 (Fla. 4th DCA 1988) (holding plaintiff entitled to bring separate, simultaneous suits against initial tortfeasor and negligent treatment providers without having to litigate the malpractice issue in the tort suit); Am. Process Co. v. Florida White Pressed Brick Co., 56 Fla. 116, 47 So. 942, 944 (1908) (“Where the law affords several distinct, but not inconsistent, remedies for the enforcement of a right,- the mere election or choice to pursue one óf such remedies does not operate as a waiver of the right to pursue the other remedies”). Contrary .to the Fifth District’s reasoning, Hintz did not decide to recover only from the initial tortfeasor. Instead, he decided to sue the initial tortfeasor first. That was not an election of remedies. Hintz’s remedy against Boozer is.not inconsistent with the remedy he seeks now against the medical provider defendants, and the judgement remains unsatisfied.
The election of remedies doctrine is intended “to prevent double recoveries for a single wrong.” Liddle v. A.F. Dozer, Inc., 777 So.2d 421, 422 (Fla. 4th DCA 2000) (quoting Goldstein v. Serio, 566 So.2d 1338, 1339 (Fla. 4th DCA 1990)). It applies in two circumstances, neither of which are present in this case. First, it can apply when the plaintiff has obtained a judgment on one of two inconsistent theories. The facts underlying the claims must be “opposite and irreconcilable.” See Barbe v. Villeneuve, 505 So.2d 1331, 1333 (Fla. 1987). Rerhedies are only inconsistent if they cannot logically exist on the same facts. Heller v. Held, 817 So.2d 1023, 1026 (Fla. 4th DCA 2002). Where, as here, the claims rely on the same facts and the plaintiff seeks further relief' consistent with the relief already given, the reihedies are not inconsistent. See Klondike, Inc. v. Blair, 211 So.2d 41, 42-43 (Fla. 4th DCA 1968) (holding that unsatisfied judgment on note was not'inconsistent with claim for foreclosure of mortgage securing it and was not an election).
Second, if. the remedies are consistent,, only “full satisfaction” of the claim will constitute an election of remedies. Thus, a party may get more than one judgment, so long as there is only one recovery. In Rodriguez ex rel. Rodriguez v. Yount, 623 So.2d 618, 619 (Fla. 4th DCA 1993), the court quashed the abatement of a medical malpractice action pending resolution of a bad faith action against the insurer of an initial, tortfeasor, holding that, “even if the damages were, identical, there is no bar to proceed against a concurrent or subsequent [tortfeasor] where the prior judgment remains uncollected.” Id. at 619. See also Heller, 817 So.2d at 1027 (holding no election where “record suggests that the judgment cannot be col *788 lected”). Satisfaction of the judgment is required because the doctrine “can serve as an instrument of injustice when an election of a remedy turns out to be unavailable.” Sec. & Inv. Corp. of the Palm Beaches v. Droege, 529 So.2d 799, 802 (Fla. 4th DCA 1988). Thus, we held in Junction Bit & Tool Co. v. Village Apartments, Inc., 262 So.2d 659, 660 (Fla. 1972), that “the issue of an election of remedies was ... of no consequence when no real remedy resulted.” As applied to the instant case, Hintz has received only an unsatisfied judgment and a payment from Allstate of less than one tenth of his total damages. There has been no “full satisfaction.”
Moreover, the “one-action rule” on which Allstate relies does not support its argument for intervention into Hintz’s medical malpractice action. The rule against splitting a cause of action applies only to a “single wrongful act.” Tyson v. Viacom, Inc., 890 So.2d 1205, 1210-11 (Fla. 4th DCA 2005) (quoting Froman v. Kirland, 753 So. 2d 114, 116 (Fla. 4th DCA 1999)). Here, Boozer’s negligence and the medical provider defendants’ malpractice are separate wrongful acts. Hintz was injured by both. As previously stated, Hintz is allowed to sue the initial tortfeasor and the medical provider defendants separately. See Barnes, 530 So.2d at 959; see also Rodriguez, 623 So.2d at 618.
Similarly, Respondent Allstate’s reliance on developments in the law, such as the law surrounding D’Amario v. Ford Motor Co., 806 So.2d 424 (Fla. 2001), and the comparative fault statute do not entitle it or Boozer to equitable subrogation without first paying the judgment in full. First, D’Amario is an automobile crashworthiness case. There, we held that apportionment of fault generally will not apply in such situations, as the manufacturer “may not be held liable for the injuries caused by the initial accident.” 806 So.2d at 426. The Legislature thereafter amended the comparative fault statute to require the jury, “in a products liability action,” to “consider the fault of all persons who contributed to the accident when apportioning fault.” Ch. 2011-215 § 1, Laws of Florida (codified at § 768.81(3)(b), Fla. Stat. (2011)).
Second, the comparative fault statute has nothing to do with the certified question before this Court. Respondents did not base their appeal to the Fifth District on 'an argument that this Court should recede from Stuart in light of the comparative fault statute or for l'easons of fairness. Nor did the Fifth District, in its certified question to this Court, ask whether Stuart should be receded from in light of the comparative fault statute. However, Florida appellate courts that have had the opportunity to address the issue directly have concluded that the comparative fault statute did not legislatively overrule Stuart. See, e.g., Caccavella, 814 So.2d at 1149 (holding § 768.81, Fla. Stat. was not broad enough to overrule Stuart, because Stuart context does not involve joint and several liability). The Fourth District then certified this question in Caccavella, and again in Letzter v. Cephas, 792 So.2d 481, 488 (Fla. 4th DCA 2001) (posing question but not passing upon it). We dismissed review of Cephas v. Letzter, 843 So.2d 871 (Fla. 2003), and Caccavella was voluntarily dismissed, Caccavella v. Silverman, 860 So.2d 976 (Fla. 2003).
Finally, while the Fifth District held that “the right to equitable subrogation arises when payment has been made or judgment has been entered,” it did not state that Boozer could substitute Hintz, or that Boozer and Allstate alone could pursue the medical provider defendants. Theodotou, 171 So.3d at 167. Instead, the Fifth District found that Respondents’ subrogation claims could proceed on a contingent basis. Id. In so holding, the district *789 court relied on the Fourth District’s decision in Gortz v. Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams, 769 So.2d 484 (Fla. 4th DCA 2000). In Gortz, the district court allowed a defendant law firm that was sued for legal malpractice to bring a third party claim against another law firm alleging equitable subrogation without having paid the entire claim. Id. at 485. However, in Gortz, the party claiming subrogation was already a defendant in the case, and was bringing the claim as a third party claim under Florida Rule of Civil Procedure 1.180, which allows a defendant to sue a third party “who may be liable” for all or part of the plaintiffs claim.
Gortz does' not apply here, in part because no third party complaint is involved and because this Court ruled in Stuart that Rule 1.180 does not allow an initial tortfea-sor to file a third party complaint against subsequent medical provider defendants for equitable subrogation. Stuart, 351 So.2d at 706. That issue was not present in Gortz. Even though not applicable, the court took pains to point out that the trial court had discretion to sever the claims if the defendants “overly complicate the litigation,” or if they “unfairly prejudice plaintiffs in the orderly presentation of their claims.” Gortz, 769 So.2d at 488 (quoting Attorneys’ Title Ins. Fund, Inc. v. Punta Gorda Isles, Inc., 547 So.2d 1250, 1252-53 (Fla. 2d DCA 1989)). In the case before us, allowing the Respondents to bring contingent subrogation claims would, Petitioners argue, overly complicate the litigation and unfairly prejudice Hintz. We agree.
CONCLUSION
The Fifth District erred in holding that Respondents could assert claims for contingent equitable subrogation without first paying the judgment in full. As such, we answer the certified question in the negative, reverse the district court’s decision, and remand the case to reinstate the dismissal of the equitable subrogation claims.
It is so ordered.
LABARGA, C.J., and PARIENTE, and LEWIS, JJ., concur.
PARIENTE, J., concurs with an opinion, in which LEWIS, J., concurs.
POLSTON, J., dissents with an opinion.
LAWSON, J., dissents with an opinion, in which CANADY, J., concurs.

. Stalley also filed a bad faith action against Allstate. The case was tried in June 2016 and a jury found that Allstate did not act in bad faith. See Stalley v. Allstate Ins. Co., No. 6:14-cv-1 074-Orl-28DAB, 2016 WL 3282371 (M.D. Fla. June 10, 2016). Stalley appealed, and the Eleventh Circuit affirmed. See Stalley v. Allstate Ins. Co., No. 16-14816, 682 Fed.Appx. 846, 2017 WL 1033670 (11th Cir. Mar. 17, 2017).