PARIENTE, J.,
concurring.
I concur fully in the majority opinion. I write separately to address the argument advanced by Justice Lawson in his dissent concerning fairness and efficiency as a reason to allow “contingent equitable subrogation.” Dissenting op. at 792 (Lawson, J.). In this case, a seriously injured plaintiff obtained a judgment against the initial tortfeasor, Emily Boozer, of over $il million. However, to date, the only portion of the judgment that.has been paid came from the initial tortfeasor’s insurer, Allstate, which paid its policy limit of $1.1 million, leaving an unsatisfied judgment of over $10 million. The vast majority of the damages were economic, with the jury, allocating $9 million to future care and treatment.
Justice Lawson mainly.contends that the majority opinion is unfair to the initial tortfeasor. His arguments, however,. all flow from an incorrect assumption—that the initial tortfeasor has been “legally ‘placed “in the shoes” of the plaintiff.’” Dissenting op. at 797 (Lawson, J.) (quoting Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702, 704 (Fla. 1980)). That assumption is belied by the critical fact upon which the majority’s reasoning is based—the initial tortfeasor has yet to satisfy the judgment. Yet, Boozer and Allstate took the position before the trial *790 court that they, and not the injured plaintiff, were entitled to be substituted as the sole plaintiffs in the injured plaintiffs medical malpractice action.
With a substantial unsatisfied judgment against the initial tortfeasor, the seriously injured plaintiff with millions of dollars in future medical care has not yet begun to be made whole. Boozer, the initial tortfea-sor, has paid nothing and will likely never be able to fully satisfy the judgment against her. According to a deposition in this case, Boozer is a young mother of twó, a student, and has no current income of her own. As Boozer stated in her initial brief before thé Fifth District Court of Appeal she, “[l]ike most Floridians, ... does not have the financial means to pay such an enormous judgment.”
Boozer has npt earned the right to stand in the plaintiffs shoes. The injured plaintiff still occupies his own shoes. As the injured plaintiff argues, “it is Mr. Hintz who is walking in those painful shoes, suffering the continuing effects—economic and emotional—of Ms. Boozer’s negligence, and who has not been compensated.” Initial Br. of Pet’r Douglas Stalley, at 38-39.
The plaintiff has never opposed intervention, just the assertion that the tortfea-sors should be substituted for the plaintiff or allowed to litigate alongside of the plaintiff. While the plaintiff objects to the initial tortfeasor and her • insurer being permitted to litigate alongside him, the plaintiff in his brief concedes that Boozer and Allstate have an interest in the litigation:
Nor does Mr. Hintz have any interest in depriving the Respondents of an opportunity to be heard. From the outset, Mr. Hintz has agreed that Respondents should be allowed to intervene. They should be entitled to notice of any settlement. If there is an actual recovery of money against the medical providers, Allstate may assert a lien or setoff, the details of which can be litigated post trial, taking into account how much of the damages were actually caused by the medical providers, how much Mr. Hintz is actually able to recover, the cost of procuring the recovery, and the extent to which the Respondents assisted or interfered .with Mi-. Hintz’s recovery efforts, and any other equitable considerations that might apply. Once Mr. Hintz’s damages have been paid in full, Ms. Boozer may also have a remedy under Fla. R. Civ. P. 1.540(b)(5), which provides for relief from a judgment if it has been satisfied, or if it “is.no longer equitable that the judgment or decree should have prospective application.”
Initial Br. of Pet’r Douglas Stalley, at 49.
.On the other hand, allowing the initial tortfeasor to intervene in the medical.malpractice case before the jury, without the plaintiffs agreement, carries the real potential of complicating the issues and confusing the jury in this new, separate case. There is no doubt that the jury would speculate as to why the initial tortfeasor is not also being sued, or whether there had been a previous lawsuit against the initial tortfeasor. Would the presence of the initial tortfeasor be explained to the jury? Would the initial tortfeasor be able to relit-igate the issue of damages? While Justice Lawson makes the assumption that the initial tortfeasor would assist the injured party in his lawsuit against the Medical Provider defendants, it remains unclear what the rights of the initial tortfeasor would be in the subsequent litigation— would she be entitled to her own set of experts; or could she ride on the plaintiffs coattails bearing none of the economic burden of the cost of the litigation; would she have a right to examine and cross-examine the witnesses; would the plaintiff be required to partner with her throughout the litigation such that the plaintiff would lose *791 the ability to control the litigation? Justice Lawson’s proposed solution of crafting a limiting instruction to alleviate this confusion is unsatisfactory in light of the myriad problems that could arise. See dissenting op. at 798-99 (Lawson, J.).
Apparently, Justice Lawson’s primary concern is the possibility of a settlement with the Medical Provider defendants, such-that the plaintiff would receive a windfall and the initial tortfeasor would not receive the benefit of a reduction in the outstanding judgment. But of course, any amount paid by the Medical Provider defendants, either through -judgment or settlement, would result in a reduction in the overall amount owed by. the initial tortfeasor. As the plaintiff points out, nothing will prevent.the initial tortfeasor or Allstate from participating in and arguing for a proportionate reduction in the judgment against the initial tortfeasor, if there is a settlement with or judgment against the Medical Provider defendants. Further, because there is a guardianship over the plaintiffs property, any settlement must be approved by the probate court at which point the initial tortfeasor and Allstate could intervene. .
In addition, Justice Lawson fails to consider that the injured plaintiff has a real incentive to obtain thé maximum amount against the Medical Provider defendants, which would inure to the benefit of the tortfeasor by.reducing the total amount of the judgment against her. Conversely, as pointed out by Holmes Medical Center, one of the Medical Provider defendants, a holding allowing contingent equitable sub-rogation would be a disincentive to. the initial tortfeasor and her insurer to first pay the entire judgment and discharge the debt if they could, instead, intervene in the medical malpractice case by filing a contingent equitable subrogation claim.[2]
When all of the equitable considerations are taken into account, the balance of the équities fall to the injured plaintiff. Arguing this case both before the Fifth District Court of Appeal and before this Court, Boozer and' Allstate quoted case law stating that the purpose of equitable subrogation is to “do perfect justice.” “What [Boozer and Allstate] seek here is not perfect and it is not justice.” Initial Br. of Pet’r Douglas Stalley, at 46. I fully concur in the majority opinion.
LEWIS, J., concurs.

. Both the severely injured plaintiff, Benjamin Edward Hintz, who appears through his guardian, Douglas Stalley, as well as the Medical Provider defendants, and the .Florida Hospital, Association as amicus, oppose the intervention of Emily Boozer and Allstate in the malpractice action.